William S. Abbott and Frances Abbott, Plaintiffs-Appellees, v. Fluid Power Pump Company, Defendant-Appellant.

Gen. No. 68–102.

Fifth District.

September 9, 1969.

Rehearing denied October 7, 1969.

Max W. Kramer, Kramer, Chused & Kramer, of St. Louis, Missouri, for appellant.

Emerson Baetz, of Alton, for appellees.

EBERSPACHER, J.

This action was brought to recover rent and for damages to property under a lease of industrial property. The corporate defendant has appealed from a judgment of the court, sitting without a jury, which awarded the plaintiffs $28,450 made up of an assessment of $26,950 for delinquent rentals under the lease and $1,500 for damages to the demised property.

It appears from the record that on April 1, 1961, plaintiffs, husband and wife, owned certain industrial premises at Alton, Illinois. William S. Abbott, the husband, also owned all of the issued capital stock of an Illinois business corporation named The Piasa Tool & Die Company. This corporation was engaged in a machine shop business in the premises. William S. Abbott was its president and manager; Frances Abbott was its secretary.

On April 1, 1961, plaintiffs entered into a written lease of the premises to the Piasa corporation. Plaintiffs signed as lessors; they also executed the lease for the Piasa corporation as its president and secretary, respectively. The basic term of the lease was for five years, from April 1, 1961, to March 31, 1966; but the lessee was given the option of renewing for an additional five years after March 31, 1966, i. e., to March 31, 1971. The lease also provided that the option would be exercised and the lease term extended unless at least six months prior to the expiration of the basic or initial term the

lessee gave written notice that it did not elect to take the extension.

The rent reserved for the initial term under the lease was $600 per month; the rent for the extention, if any, was provided for at $1,000 per month.

On May 13, 1961, defendant Fluid Power Pump Company, a Delaware corporation, entered into a written contract with William S. Abbott to buy from him the entirety of the outstanding Piasa Tool & Die capital stock. This agreement provided that coincident with the sale of the stock the real estate owned by the plaintiffs would be leased to Piasa for five years at $600 per month with an optional renewal for an additional five years at $1,000 per month. Thereafter Abbott's stock was escrowed with First National Bank in Alton for ultimate delivery to Fluid Power and was, ultimately, so delivered. William S. Abbott remained as president of Piasa and Frances Abbott as secretary; but Paul Courtney and Robert C. McCarthy, officers of Fluid Power, were added to Piasa's roster of officers, Courtney as vice president and McCarthy as assistant secretary.

Although the Abbott-Fluid Power stock purchase agreement appeared to contemplate a new lease from the Abbotts, no new lease was formally executed; instead, on November 29, 1963, a document entitled "Supplemental Lease" was entered into. The amendment was signed by plaintiffs, William S. Abbott and Frances Abbott, as owners and lessors; the lessee corporation (Piasa) signed by and through Courtney and McCarthy, the new Piasa officers from Fluid Power.

The amendment, or Supplemental Lease, brought additional land within the lease coverage and raised the rents reserved for the initial five-year term to $950 (from $600) per month and for the optional extended five-year term to $1,350 (from $1,000) per month. All other terms of the original lease were to remain in full force and effect, the amendment specifically stated.

305

It should be noted that subsequent to the date of the original agreement for the sale of stock executed on May 13, 1961, Mr. Abbott acted as an officer of both Piasa and Fluid Power. He was also a member of the Board of Directors of both the defendant Fluid Power as well as Piasa subsequent to the sales agreement, all in accordance with the written agreement. Mr. Abbott continued to serve as a director of Piasa until its dissolution on April 9, 1964. He continued to serve as a director of Fluid Power until October 18, 1965. It should be noted also that the latter date is five months and thirteen days before the end of the original term of the lease between the plaintiffs and Piasa and 18 days after the option to renew the said lease was automatically exercised by failure to give notice of a desire not to exercise it. The minutes of the Board of Directors' meeting of Fluid Power entered into evidence by the defendant make no mention of the exercise of the option.

Subsequent to the lease amendment Fluid Power, having become the sole shareholder of Piasa, began steps to dissolve it. On December 2, 1963, a Statement of Intent To Dissolve by Voluntary Consent of Shareholders pursuant to section 75 of the Business Corporation Act was filed with the Secretary of State of Illinois. The Statement of Intent To Dissolve was signed by the plaintiffs as president and secretary of the corporation, respectively, at the direction of defendant's attorney who advised plaintiffs by letter accompanying the Statement of Intent To Dissolve that the minutes of a special meeting of Directors and shareholders of Piasa were being drafted which would authorize the dissolution.

Thereafter, on April 9, 1964, Articles of Dissolution, again executed by the plaintiffs as president and secretary, were filed by the Secretary of State and on the same date the Secretary of State issued the Certificate of Dissolution, thereby dissolving Piasa.

306

During the interim and after the dissolution, Fluid Power continued operations at the old Piasa plant which were the premises leased from the plaintiffs but referred to the site on its letterheads and literature as "Piasa Division (Formerly Piasa Tool & Die) Fluid Power Pump Company." Needless to say, no written notice was given to the plaintiffs to the effect that the five-year extension provided in the lease would not be desired. On April 20, 1966, the plaintiffs through their attorney informed the defendant Fluid Power, "as successor to Piasa" that the monthly rent effective April 1, 1966, would be $1,350 in accordance with the lease.

The defendant, Fluid Power, thereafter gave a Notice of Termination of Tenancy effective February 1, 1967, wherein the defendant contended after the original lease term ending March 31, 1966, it was simply a month-to-month tenancy at $950 per month.

The plaintiffs in their complaint filed November 15, 1966, alleged that since March 31, 1966, and in the future until the renewed term ends March 31, 1971, Fluid Power has been and will remain liable under the lease at $1,350 per month.

The plaintiffs at the trial also offered evidence of damages and uncorrected alterations resulting from the tenancy.

The trial court entered judgment for the plaintiffs and against the defendant for $28,450 based upon the finding of rentals due in the amount of $26,950 and damages in the amount of $1,500.

The issues presented by the defendant in their appeal are:

1. Whether or not the terms of a lease or renewal option thereunder can be enforced against the stockholder of the original corporate lessee after liquidation.

2. Whether a lease made between a corporate lessee and an officer-director-stockholder lessor, who repre-

sented both sides for the exercise of a renewal option thereunder is enforceable against the corporation.

3. Whether such a lease or renewal option is enforceable in the absence of a showing of good faith and fairness by the lessor.

4. Whether or not a judgment in excess of the amount prayed in the complaint can stand where actual amendment of said complaint has not been made.

5. Whether or not a judgment which on its face is ambiguous and in excess of the amounts supported by the evidence can stand.

The arguments shall be dealt with in the order presented by the defendant.

In regard to the first issue, the defendant urges that the terms of a lease are not binding upon the stockholders of a corporation after its dissolution. In this regard the defendant argues that the original lease, as well as the Supplemental Lease, was executed by and between the plaintiff, as owner of the premises, and the Piasa Tool & Die Company as tenant. The defendant's argument continues that there is no evidence in the record as to any assignment of the lease agreement or of any assumption of the liabilities and contracts of Piasa by Fluid Power and that accordingly, the dissolution of the corporation terminated these obligations. The defendant misconceives the nature and effect of the dissolution of the corporation. After the defendant had acquired all of the shares of Piasa it sought to effect the dissolution of the corporation pursuant to the provisions of section 75 of the Illinois Business Corporation Act, c 32, § 75, Ill Rev Stats 1967. That section provides the manner in which a corporation may elect to dissolve voluntarily and wind up its affairs by the written consent of the holders of record of all of its outstanding shares. This was the manner chosen by the defendant as holder of all of the outstanding shares, and the plaintiffs executed the documents at the direction of defendant's at-

torney merely as the necessary officers as provided by the statutes. It must be remembered that the defendant as holder of all of the outstanding shares was in complete control of the Board of Directors and accordingly, the corporate officers. Thereafter, the defendant again through its appropriate officers filed the Articles of Dissolution pursuant to section 80 of the Business Corporation Act. This section provides:

"When all debts, liabilities, and obligations of the corporation shall have been paid and discharged, or adequate provisions shall have been made therefore, and all of the remaining property and assets of the corporation shall have been distributed to its shareholders, articles of dissolution shall be executed in triplicate by the corporation by its president or a vice-president and verified by him, and the corporate seal shall be thereto affixed, attested by its secretary or an assistant secretary, which shall set forth:

"(a) The name of the corporation.

"(b) That the corporation has theretofore filed with the Secretary of State and with the recorder of deeds of the county in which the registered office of the corporation is situated, a statement of intent to dissolve, and the date on which such statement was filed by the Secretary of State.

"(c) That all debts, obligations and liabilities of the corporation have been paid and discharged or that adequate provision has been made therefor.

"(d) That all the remaining property and assets of the corporation have been distributed among its shareholders in accordance with their respective rights and interest.

"(e) That there are no suits pending against the corporation in any court, or that adequate provision has been made for the satisfaction of any judgment, order, or decree which may be entered against it in any pending suit."

■ We find subsections (c) and (d) applicable to the present situation. We find no evidence of record that the obligations of the lease had been discharged or that adequate provision had been made for them. Here defendant, the single stockholder, obviously considered the lease a valuable asset, keeping it in effect by the continuing occupation of the premises and performing its covenants as performance became due, thus accepting the rights and benefits provided by the lease. Under such circumstances defendant assumed and became responsible for the lessee's obligation under the lease. That the lease was not terminated by the dissolution of the corporate lessee is made quite clear in the annotation found in 147 ALR 360–372; that annotation makes it equally clear that the successor to the dissolved corporation who accepts the lease of the dissolved corporation as a valuable asset and accepts the benefits, steps into the shoes of the corporate lessee with the same rights and liabilities in respect to the lease as attached to the original corporate lessee.

Plaintiffs have urged that since Fluid Power purchased all of Piasa's capital stock, occupied Piasa's premises, carried on its business and advertised that Piasa had become a division of Fluid Power, and then caused Piasa to be dissolved, remaining itself as a viable entity, that a merger of the companies was effected, with Fluid Power the surviving corporation. In support of such theory they have cited the applicable merger section of the Business Corporation Act (Ill Rev Stats, c 32, §§ 157.61 and 157.-69a) and Fletcher Cyc Corp, 1961 ed, § 7082; 19 Am Jur 2d, Corporations, § 1492; Chicago, S. F. & C. R. Co. v. Ashling, 160 Ill 373, 43 NE 373, 374–376. They point out that whether there was a strict compliance with the law respecting corporate mergers is of no consequence, when the result is a de facto merger, Chicago, S. F. & C. R. Co. v. Ashling, supra; Chicago & Western Indiana R. Co. v. Heidenreich, 254 Ill 231, 98 NE 567, 569;

Fletcher Cyc Corp, 1961 ed, § 7155, since Fluid Power would be estopped to deny the validity of its own acts by challenging their de jure character, Fletcher, supra, §§ 3889, 3926, even though it be a foreign corporation and the absorbed or merged entity have previously existed under Illinois law, 36 Am Jur2d, Foreign Corporations, § 394; Racine & M. R. Co. v. Farmers' Loan & Trust Co., 49 Ill 331, 347. They then propose that by reason of such merger Fluid Power became "responsible and liable for all the obligations and liabilities" of Piasa including its obligation under Piasa's lease with plaintiffs, under applicable statutory law, chapter 32, § 157.-69(e).

We need not here depend upon the theory of de facto merger, nor the fact that the Articles of Dissolution misrepresented the true facts, because the manner in which defendant proceeded, both before, during and subsequent to the dissolution of Piasa, leads us to the conclusion that the terms and obligations of Piasa's leases have devolved upon the defendant, and that accordingly the defendant is liable for the terms and obligations thereof.

In regard to the second and third issues presented by the defendant, the defendant argues that the lease is not enforceable because the plaintiff was a director and officer of the lessee corporation and represented both parties to the lease. Accordingly, the defendant argues the plaintiff must prove his good faith and the fairness of the lease. In this regard the defendant cites for our consideration Pepper v. Litton, 308 US 295, and Higgens v. Lansingh, 154 Ill 301, 40 NE 362 (1895). However, the defendant's argument does not give due consideration to the fact that the Supplemental Lease was entered into subsequent to the acquisition of all of the Piasa shares by the defendant. Subsequent to the defendant's acquisition of all of the shares new directors, as well as officers, were added to the Piasa Corporation and as stated before upon acquisition of all the shares the de-

fendant was in complete control of the corporation. The Supplemental Lease which took in new property revised the rent, both for the original term and for the optional extension. It also explicitly ratified the other and remaining terms of the original lease. It is true that the original lease between the plaintiffs and the Piasa corporation bore the signatures of plaintiffs as lessors and also bore their signatures as the executing officers of the lessee corporation; but that is because at the time of execution plaintiffs were the only shareholders of the lessee corporation and its only officers. Fluid Power had no legal interest, at that time, when Abbotts leased property which they owned as individuals to themselves as a corporation; a legitimate transaction. After Fluid Power had become an interested party by contracting to purchase Abbotts' shares, the Abbotts signed only as lessors and Courtney and McCarthy, Fluid Power men, newly placed in the Piasa corporation, signed for the lessee. Under such circumstances there was no fraud, dual representation or conflict of interest in the original lease. There is no evidence that the plaintiffs overreached the defendant, and in fact the evidence indicates very sophisticated negotiation on the part of both parties.

■ Neither can we say that the determination by the trial court that Mr. Abbott did not violate any fiduciary relationship while serving as an officer and member of the board of directors of defendant is against the manifest weight of the evidence. There is a conflict of testimony as to whether the members of the board discussed the lease and its renewal at an increased rental. The minutes would not be conclusive as to whether such discussion was or was not engaged in, in view of the fact that no positive action was necessary to exercise the option, and the minutes were shown to be incomplete in numerous aspects. McCarthy, who had served as Secretary of defendant for ten years at the time of trial, as

well as Treasurer and director, and had served as an officer and director of the Piasa corporation and who executed on the Piasa corporation's behalf the Supplemental Lease which referred to the renewal option and the increased rental, knew of its terms. Whatever conflict of interest Mr. Abbott might have had because of his ownership of the leased premises and becoming an officer and director of defendant during the term of the lease was known to the executives of defendant when they "appointed" him to those capacities.

The defendant's fourth issue that the judgment is in excess of the prayer and that accordingly cannot stand where no actual amendment of the said complaint has been made is likewise without merit. The record clearly indicates that the prayer was amended to conform with the evidence and in fact the prayer as amended was endorsed with the consent of counsel for the defendant.

The defendant's arguments in regard to the fifth issue are twofold. The first is that the written order entered by the court in regard to the delinquent rental provides for a recovery of "Twenty-*six* Thousand Nine Hundred Fifty Dollars ($25,950.00)." The defendant's argument continues that even if this difference may be reconciled the evidence does not support a recovery of either figure.

■ The plaintiffs admit to the error in both regards and further admit that the error was due to a miscalculation of the damages at the termination of the trial. The calculation may be corrected upon the following uncontradicted evidence: The renewal term commenced April 1, 1966. The trial was completed May 6, 1968. Accordingly, there were nine rental installments due for the year 1966, 12 for 1967 and 5 for 1968, each in the amount of $1,350.00. This would total 26 rental installments due or a total of $35,100 at the close of the trial. The evidence further reveals that the defendant had paid for 9 months in 1966 at the rate of $950 per month affording

313

the defendant a credit of $8,550, setting this credit off against the $35,100 due in gross leaves a net of $26,550 in delinquent rent. The trial court further found $1,500.00 damages to the demised premises. This produces a total judgment for delinquent rent and damages of $28,050. Supreme Court Rule 366 permits the correction of such errors by the Reviewing Court.

For the foregoing reasons the judgment of the Circuit Court of Madison County, Illinois, as corrected as to amount as set forth herein, is affirmed.

Judgment affirmed.

GOLDENHERSH and MORAN, JJ., concur.