PAULITA HERNANDEZ, Plaintiff-Appellant, *v.* JOHNSON PRESS CORPORATION *et al.*, Defendants-Appellees.

First District (5th Division)   No. 77-1558

Opinion filed March 30, 1979.

Reed, Lucas & Doherty, of Chicago (Scoby, Biggam & Lunding, P. C., of counsel), for appellant.

Maddux, Johnson & Cusack, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff brought an action against the corporate successor of the original manufacturer of a punch press seeking damages for injuries sustained while operating the press. The trial court granted summary judgment in favor of defendant. On appeal, plaintiff raises the following issues: (1) whether the question of successor liability for defective products is one of tort law or corporate law; (2) whether Illinois has greater contacts with the instant case than Indiana; (3) whether a *de facto* merger has occurred; and (4) whether Illinois should adopt a product line exception to the general rule of nonliability of a purchaser of assets.

We affirm the trial court. The pertinent facts follow.

On April 11, 1975, plaintiff, Paulita Hernandez, was injured when her hands were caught in a punch press while working at Oxford Products, Inc., of Addison, Illinois. As a result of the injuries sustained, plaintiff filed suit against Johnson Press Corporation, the original manufacturer of the machine, and Amsted Industries Incorporated, the alleged corporate successor, seeking damages for the defective and unreasonably dangerous design and manufacture of the machine.

Defendant, Amsted Industries, moved for summary judgment on the ground that neither Amsted nor any of its subsidiaries or divisions manufactured or designed the punch press in question, but that the press was manufactured by Johnson Press Corporation, a corporation which had been dissolved in 1965. In support of the motion for summary

judgment, M. C. Holmes, secretary and corporate counsel of Amsted, filed an affidavit which set forth the following: (1) that an identification card referred to in plaintiff's complaint indicated that the press in question was manufactured by Johnson Press Corp., Elkart, Indiana, and shipped on October 1, 1952; (2) that neither South Bend Lathe, a division of Amsted, nor Amsted manufactured the press in question; (3) that Amsted did not at any time assume the liabilities of Johnson Press Corp.; (4) that the assets and liabilities of Johnson Press were purchased by a company known as Bontrager in 1956; (5) that in 1962 Amsted purchased the assets of Bontrager and acquired one outstanding share of stock in Johnson Press; and (6) that Johnson Press was dissolved pursuant to the Indiana General Corporation Act by shareholders vote on July 20, 1965, and pursuant to approval and filing of articles of dissolution with the Secretary of State of the State of Indiana on August 21, 1965. Plaintiff did not file any counteraffidavits. The trial court granted defendant's motion for summary judgment and plaintiff appeals.

## Opinion

Although the trial court decided the present case under Indiana corporate law, plaintiff initially argues that the court should have applied Illinois tort law and that under tort law a genuine issue of fact exists as to the defendant's liability. We disagree. A review of the record clearly indicates that plaintiff neither raised this argument nor objected to the application of Indiana corporate law at trial. Plaintiff's failure to raise this issue and object to it at trial precludes us from deciding it on appeal. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417; *In re Estate of McGaughey* (1978), 60 Ill. App. 3d 150, 376 N.E.2d 259; *Second Federal Savings & Loan Association v. Home Savings & Loan Association* (1978), 60 Ill. App. 3d 248, 376 N.E.2d 349.) Thus, Indiana corporate law principles are applicable to this appeal.

Since the above-mentioned issue has been waived, the next issue of whether Illinois has greater contacts than Indiana need not be discussed.

Plaintiff also contends that a *de facto* merger has occurred under the facts before us. She argues, in effect, that through Bontrager, the intermediate purchaser, the assets and liabilities of Johnson were absorbed into either Amsted or its subsidiary, South Bend Lathe, thereby creating a basis for imposing liability on Amsted. We find plaintiff's argument unpersuasive.

■■ Under Illinois law, a corporation that purchases the assets of another corporation is not liable for the debts and liabilities of the transferor in the absence of an agreement providing otherwise. (*Johnson v. Marshall & Huschart Machinery Co.* (1978), 66 Ill. App. 3d 766, 384 N.E.2d 141. See also *Commercial National Bank v. Newston* (1976), 39 Ill. App. 3d 216,

349 N.E.2d 138; *Buis v. Peabody Coal Co.* (1963), 41 Ill. App. 2d 317, 190 N.E.2d 507; *Alexander v. State Savings Bank & Trust Co.* (1935), 281 Ill. App. 88.) There are, however, several recognized exceptions: (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. (*Leannais v. Cincinnati, Inc.* (7th Cir. 1977), 565 F.2d 437; *Travis v. Harris Corp.* (7th Cir. 1977), 565 F.2d 443.) Exception (2) is recognized in Illinois (Business Corporation Act, Ill. Rev. Stat. 1977, ch. 32, par. 157.69(e)), and has been interpreted to include a *de facto* merger. (See *Abbott v. Fluid Power Pump Co.* (1969), 112 Ill. App. 2d 303, 251 N.E.2d 93.) In light of the foregoing principles, as applied to the present case, we find no *de facto* merger.

The cases cited by plaintiff in which the courts have found that there was a *de facto* merger have applied the test set forth in *McKee v. Harris-Seybold Co.* (L. Div. 1970), 109 N.J. Super. 555, 264 A.2d 98, *aff'd* (App. Div. 1972), 118 N.J. Super. 480, 288 A.2d 585. (See, *e.g., Shannon v. Samuel Langston Co.* (W.D. Mich. 1974), 379 F. Supp. 797; *Turner v. Bituminous Casualty Co.* (1976), 397 Mich. 406, 244 N.W.2d 873.) The criteria for establishing a *de facto* merger are as follows:

> "(1) There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations.
>
> (2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.
>
> (3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.
>
> (4) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation." *Shannon v. Langston* (W. D. Mich. 1974), 379 F. Supp. 797, 801, citing *McKee v. Harris-Seybold Co.*

Even if Illinois were to adopt this test, applying it to the facts presented here, we think that there was no *de facto* merger between Johnson and Amsted. There are no facts indicating continuity of management, personnel, physical location, assets and general business operations. Nor does the record reflect continuity of shareholders or an exchange of stock. Johnson was not dissolved until 1965, three years

subsequent to Amsted's purchase of the assets of Bontrager and one outstanding share of Johnson stock. Moreover, Amsted did not at any time assume the liabilities of Johnson.

Finally, plaintiff urges this court to adopt the product line exception to the general rule of nonliability of a purchaser of assets as exemplified by *Ray v. Alad Corp.* (1977), 19 Cal. 3d 22, 560 P.2d 3, 136 Cal. Rptr. 574. We do not believe that the *Ray* product line rationale should be adopted by this court. In that case, plaintiff brought an action seeking damages for injuries sustained from the use of a defective ladder manufactured and sold by defendant's predecessor. The California Supreme Court, having found no basis for imposing liability on defendant under the traditional exceptions discussed above, relied upon policy considerations. This justification rested upon: (1) the nonavailability of plaintiff's remedies against the original manufacturer due to the acquisition of the business by the successor; (2) the successor's ability to assume the original manufacturer's risk-spreading rule; and (3) the fairness involved in requiring the successor to bear the burden for any defects as a consequence of the successor's use of the original manufacturer's good will in continuing the product line. (*Ray*, 19 Cal. 3d 22, 31, 560 P.2d 3, 9, 136 Cal. Rptr. 574, 580.) The court concluded:

> "* * * a party which acquires a manufacturing business and continues the output of its line of products under the circumstances here presented assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired." 19 Cal. 3d 22, 34, 560 P.2d 3, 11, 136 Cal. Rptr. 574, 582.

Until recently, an Illinois court had not directly addressed this issue. However, in *Johnson v. Marshall & Hushchart Machinery Co.* (1978), 66 Ill. App. 3d 766, 384 N.E.2d 141, where plaintiff asserted the product line exception under facts similar to those here, the court rejected the rationale of *Ray* and held that under the circumstances presented the defendant did not assume liability for the defective products of its predecessor.

In *Johnson*, plaintiff was injured on July 23, 1974, while operating a punch press manufactured in 1937 by V & O Press Co., Inc., a New York corporation. The sequence of events prior to plaintiff's injuries with respect to the transfers of title was as follows:

> (1) In 1937, V&O Press Co. changed its name to Hudson Press, and transferred title to a successor V&O Press Co. in 1938;
> (2) In 1942, the 1938 V&O transferred title to Marshall Field and Charles G. Cushing, a partnership, which transacted business as V&O Press Co. The 1938 V&O was dissolved;
> (3) In 1944, another V&O Press Co. was incorporated in New York

and the Field-Cushing partnership (1942 V&O) subsequently transferred title to the 1944 V&O;

(4) In 1947, the 1944 V&O conveyed title to Rockwell Manufacturing Co.;

(5) In 1950, Rockwell transferred the title to its V&O division to Hartford Empire Co. which later changed its name to Emhart Manufacturing Co. Hartford and Emhart operated the division under the names Hudson Division and V&O Division;

(6) In 1963, Thomas Rudel contracted with Emhart for a cash purchase of Hudson and V&O Divisions and New V&O was incorporated on the same day. Rudel assigned his interest in the contract to purchase the V&O Division of Emhart to defendant, New V&O. Rudel purchased only a portion of Emhart's assets, which included assumption of only some of Emhart's obligations, and Emhart remained active subsequent to the sale. The New V&O acquired its assets from Rudel in exchange for all of the New V&O stock.

Based on the numerous transfers preceding defendant's acquisition of the business, the court in *Johnson* made a significant distinction between the factual situation in *Ray*, where no intermediate transactions were involved. The court made a further distinction with respect to the time span which existed between the sale of the business and the date of the injury. In *Johnson,* the injury occurred 36 years after the sale of the business, while in *Ray* the injury occurred only 9 months later. Finally, the court pointed out that there were no consulting arrangements and agreements not to compete between the manufacturer and the transferee corporation, as in *Ray.*

We submit that *Ray* and the case at bar can be distinguished on a similar basis. Here, as in *Johnson,* there was an intermediate transaction involved. In 1956, the assets and liabilities of Johnson Press were purchased by Bontrager and in 1962 Bontrager's assets and one outstanding share of stock in Johnson Press were purchased by Amsted. Moreover, the original sale of Johnson Press in 1956 and the date of plaintiff's injury in 1975 were separated by a span of 19 years. Furthermore, there were no consulting arrangements and agreements not to compete involved in the case at bar. Although plaintiff in her supplementary brief attempts to distinguish *Johnson* and the instant case for the purpose of placing this case within the rationale of *Ray,* we view such factual distinctions as insignificant and of no consequence to the outcome of this case.

In addition to the reasons enumerated above, this court declines to accept the product line exception for a reason similar to that articulated in

*Leannais v. Cincinnati, Inc.* (7th Cir. 1977), 565 F.2d 437. As was so cogently stated by that court:

> "In recent years for a variety of reasons, many have thought it necessary to turn to the courts in search of solutions to social problems. Courts are ill-equipped, however, to balance equities among future plaintiffs and defendants. Such forays can result in wide-ranging ramifications on society, the contemplation of which is precluded by the exigencies of deciding a particular case presented on a limited record developed by present parties. Absent compelling necessity, therefore, a Federal Court should not impose the policy pronouncements of the Supreme Court of one state upon the citizens of another. Nor are we at liberty to impose our own view as to what the law of Wisconsin should be. As the Wisconsin Supreme Court has recognized, such broad public policy issues are best handled by legislatures with their comprehensive machinery for public output and debate." (*Leannais*, at 441.)

We find this analysis equally applicable with respect to the case at bar.

■■ ■ A motion for summary judgment should be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *." (Ill. Rev. Stat. 1977, ch. 110, par. 57(3); *Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045.) A party opposing a motion for summary judgment cannot rely solely on the issues raised in the complaint or answer, where such issues are not further supported by evidentiary facts through affidavits. (*Manda v. Branham* (1977), 50 Ill. App. 3d 91, 365 N.E.2d 216.) The practical effect of plaintiff's failure to file counteraffidavits is to admit the facts as presented by defendant's affidavits. (*Manda v. Branham* (1977), 50 Ill. App. 3d 91, 94, 365 N.E.2d 216, 219.) In reviewing the trial court's granting of summary judgment, however, we must consider all grounds urged and facts revealed in that court. (*Marshall v. City of Chicago Heights* (1978), 59 Ill. App. 3d 986, 376 N.E.2d 657.) Application of the rationale and holding of these cases to the present case impels us to conclude that no genuine issue as to any material facts exists.

Accordingly, the movant being entitled to judgment as a matter of law, we therefore affirm the judgment of the trial court granting defendant's motion for summary judgment.

Affirmed.

LORENZ and MEJDA, JJ., concur.