ROBERT FREEMAN, Plaintiff-Appellee, *v.* WHITE WAY SIGN AND MAINTENANCE COMPANY, Defendant and Third-Party Plaintiff-Appellant.— (THE BUNKER RAMO COMPANY, Third-Party Defendant-Appellee.)

First District (5th Division)   No. 78-1679

Opinion filed February 22, 1980.—Rehearing denied April 11, 1980.

Fredrick J. Fraterrigo and James F. Best, both of Kralovec, Sweeney, Marquard & Doyle, of Chicago, for appellant.

Michael H. Postilion, of Chicago, for appellee Robert Freeman.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas R. Nelson, and Charles B. Lewis, of counsel), for appellee The Bunker Ramo Company.

Mr. JUSTICE MEJDA delivered the opinion of the court:
Plaintiff brought this action to recover for personal injuries he

suffered when he fell from a theater marquee ladder. A directed verdict was entered in favor of the third-party defendant. A jury rendered a verdict for plaintiff against defendant, White Way Sign and Maintenance Company (White Way), in the amount of $125,000, and judgment was entered on that verdict. On appeal, White Way contends that: (1) the trial court erroneously permitted plaintiff to reinstate a count previously dismissed; (2) it is not liable as a matter of law, or if liable, it should be indemnified by the third-party defendant; and (3) certain errors committed at trial entitle it to a new trial. Because of the disposition of this appeal, it is necessary to address only the first two of White Way's contentions.

This case involves the issue of a successor corporation's tort liability for injuries resulting from a predecessor's product. A review of the pleadings and evidence presented at trial reveals the following facts. In 1916, Thomas Flannery, Sr., started a sign business called White Way Service Company. The name was later changed to White Way Electric Sign and Maintenance Company, and was owned and operated by the Flannery family. In 1966, Amphenol Corporation bought the stock of White Way Electric Sign and Maintenance Company from the Flannerys. James Flannery, the president of White Way Electric Sign and Maintenance Company, testified at trial that the corporation was dissolved but was unsure of the date. Other evidence indicated that the corporation was still registered with the Secretary of State in 1969. Testimony of the secretary-treasurer of the corporation indicated that the previous corporation continued merely as a name-holding corporation to prevent an outside party from using the name and that it held no assets. Amphenol operated the sign business as one of its divisions under the name "White Way Sign, a division of Amphenol Corporation" (White Way-Amphenol). In 1968 Amphenol Corporation merged with the Bunker Ramo Company and the sign company became "White Way Sign Division of Bunker Ramo Company."

From 1966 to 1970, James Flannery was vice-president of the White Way Sign division of Amphenol and then Bunker Ramo, but was not a corporate officer, director or shareholder in either parent corporation. In 1968 White Way Sign was a small part of Bunker Ramo, providing only about 2% of its total revenues.

In 1970 the instant defendant, White Way Sign and Maintenance Division, came into legal existence. On April 20 of that year a certificate of incorporation was issued for J. E. Enterprises, Inc., which was owned by the Flannerys. Pursuant to an agreement dated June 1, 1970, J. F. Enterprises, Inc., purchased certain assets of White Way Sign division of Bunker Ramo for $678,000. Included in the assets were the stock of the name-holding corporation, inventories, plant equipment and certain

maintenance contracts. Bunker Ramo retained all the land, buildings, certain lease contracts and other items amounting to about 90% of the division's assets. The agreement expressly provided: "* * * Seller shall be responsible for all liabilities of the Division arising out of activities of the Division prior to the effective date [January 1, 1970]; but all liabilities (except liabilities related to the properties, interests and rights retained by Seller) of the Division arising out of activities of the Division after the Effective Date shall be the obligation of the Buyer." J. F. Enterprises' articles of incorporation were amended on June 2, 1970, to change the corporate name to White Way Sign and Maintenance Corporation. The name-holding corporation was liquidated on the same day.

After this agreement Bunker Ramo continued to receive income from its interest in the division. In 1975 White Way Sign and Maintenance Company purchased the remaining assets of the division from Bunker Ramo. Bunker Ramo continued its existence after this sale.

The theater marquee in question was installed by White Way-Amphenol in 1967. When installed, the marquee had no access ladder and a portable extension ladder was used to change the letters on the marquee. Because of the difficulties experienced with this arrangement, White Way-Amphenol proposed to install a permanent steel ladder that would extend from ground level to the catwalk surrounding the marquee. However, because of a change of plans, a standard aluminum ladder was purchased from an unknown source and ultimately affixed to the marquee by White Way-Amphenol in 1967 by means of steel bolts.

Plaintiff's accident occurred on September 9, 1971. At that time he was a 17-year-old high school senior who had worked for the theater for a period of 7 or 8 months. He performed odd jobs for the theater, and on the day of the accident he was asked to change the letters on the marquee, a task he had never done previously. Plaintiff ascended the ladder carrying a box containing the letters. As he climbed upward there were times when his hands were not in contact with the ladder. When he was a couple of feet from the top, he remembered missing a rung with his hand. He fell and sustained the injuries for which he brought this action.

Plaintiff originally filed a complaint against White Way Electric Sign and Maintenance Company and White Way Sign and Maintenance Company based upon alleged violations of the Structural Work Act. (Ill. Rev. Stat. 1977, ch. 48, pars. 60 through 69.) The complaint was amended to include a strict liability count and a negligence count. White Way filed a second amended third-party complaint based on products liability against Bunker Ramo seeking indemnity for any possible liability of White Way. White Way alleged that Bunker Ramo was the actual manufacturer of the ladder and that White Way was its corporate successor. Bunker Ramo sought to have the third-party complaint for

indemnity on products liability dismissed, contending that the sale of the marquee was an isolated event and that since it was permanently attached to real estate it could not be the subject of a products liability suit.

On September 14, 1977, Bunker Ramo renewed its motions to dismiss White Way's claim and White Way moved to dismiss plaintiff's products liability count from his amended complaint. Judge DeBow, the trial judge assigned to the case, granted both motions on that day, and the orders included findings that there was "no just cause to delay enforcement or appeal" of the orders.

The case proceeded to trial, and during trial plaintiff filed his second amended complaint based solely on the Structural Work Act and negligence counts. The jury could not reach a verdict and a mistrial was declared. On September 23, 1977, Judge DeBow ordered that the case be returned to the presiding judge for reassignment.

White Way filed a timely post-trial motion concerning the Structural Work Act and negligence aspects of the case, but it did not relate to the dismissed products liability counts. During the course of argument on the motion, White Way's attorney referred to evidence discovered at trial which showed that the ladder was not permanently affixed to the marquee as all parties had earlier believed and stated his belief that this misconception was the basis for Judge DeBow's dismissal of the products liability counts. Judge DeBow concluded his ruling on the motion by saying, "Take you all back where you started." A written order on the post-trial motion was entered on October 13, 1977, and pertained only to matters raised in the motion and did not vacate the orders of September 14 which dismissed the products liability counts.

On April 13, 1978, the case was assigned to Judge Geroulis for trial. The case proceeded to a second trial on April 14, 1978. On that date plaintiff sought to file a third amended complaint which would reinstate the products liability count but omit the negligence count. White Way objected contending that because the final and appealable order of September 14 which dismissed the products liability claim had not been appealed, the count could not be reinstated. Judge Geroulis granted plaintiff leave to file the complaint and allowed White Way to file a fourth amended third-party complaint which included an indemnity count for products liability against Bunker Ramo. The court also granted summary judgment for White Way on the Structural Work Act count. The case proceeded to trial based solely on the products liability counts of plaintiff's complaint and the third-party complaint.

At the close of the evidence, the court denied White Way's motion for a directed verdict but directed a verdict for Bunker Ramo. The jury found for plaintiff in the amount of $125,000 and judgment was entered on the verdict.

On September 11, 1978, White Way presented a motion to Judge DeBow seeking certification and filing for the report of proceedings that occurred on October 11, 1977, when White Way's post-trial motion for the first trial was presented. Plaintiff's counsel stated his belief that the October 13, 1977, order entered on White Way's post-trial motion was incomplete and did not reflect the intention of the court's oral ruling on October 11. The hearing was continued until the following day when Judge DeBow stated:

"It was my intention—it was my understanding that we put all the parties—this is not the first case I had like this. I put all the parties back in the same position you were when you came to me, when you were originally assigned to me, and then leave up to the next judge to rule on any motions you want to bring up.

That I did not want to saddle another judge with any ruling that I made. Since you started all over again, you have an opportunity to present to that judge all these questions. Let him decide since he's going to hear it.

He would not be in the position to have to change any decision I made because I put everything back where I started, starting all over. Present it to him, and get his point of view, and decision, and what he feels the rules and law is that affects his case.

That is what I intended to do. It's not clearly—it says here, I want to take you all back where you started. The idea was to put you back in the same position you were when the case was first assigned to me."

Pursuant to plaintiff's request, Judge DeBow entered a *nunc pro tunc* order on September 13, 1978, which vacated as of October 11, 1977, the September 14, 1977 orders which dismissed the products liability counts. The *nunc pro tunc* order returned all pleadings and parties to the status they held when the case was originally assigned to him.

OPINION

■■ The first question to be resolved is whether plaintiff's products liability count was properly reinstated before the second trial. White Way contends that the September 14, 1977, order dismissing plaintiff's products liability count was final and appealable since it disposed of a distant cause of action (*Rone v. Boncar Construction Co.* (1976), 45 Ill. App. 3d 1, 358 N.E.2d 1315; *Weber v. Northern Illinois Gas Co.* (1973), 10 Ill. App. 3d 625, 295 N.E.2d 41) and included the requisite finding under Supreme Court Rule 304 (Ill. Rev. Stat. 1977, ch. 110A, par. 304). It argues that because plaintiff failed to appeal the order or file a section 72 petition (Ill. Rev. Stat. 1977, ch. 110, par. 72) the trial court lost jurisdiction of the case and could not reinstate the count. (See *Fox v. Department of*

*Revenue* (1966), 34 Ill. 2d 358, 215 N.E.2d 271; *Sabath v. Mansfield* (1978), 60 Ill. App. 3d 1008, 377 N.E.2d 161.) Because the September 14, 1977, order was final and appealable, and plaintiff failed to challenge that order, we find that the count was not properly reinstated. Therefore, the judgment which was based on the count must be reversed.

Supreme Court Rule 304 (Ill. Rev. Stat. 1977, ch. 110A, par. 304) governs appeals from orders which do not dispose of an entire proceeding. That rule provides in pertinent part:

> "(a) * * * If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. * * * In the absence of such a finding, any [such] judgment * * * is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties."

An order is final if it either terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate branch thereof. (*South Chicago Community Hospital v. Industrial Com.* (1969), 44 Ill. 2d 119, 254 N.E.2d 448; *Cohen v. Sterling Nursing Home, Inc.* (1978), 57 Ill. App. 3d 162, 372 N.E.2d 934.) Although the statement of a single claim in several ways, by multiple counts, does not warrant a separate appeal upon dismissal of one of the counts (*Cunningham v. Brown* (1961), 22 Ill. 2d 23, 174 N.E.2d 153; *Veach v. Great Atlantic & Pacific Tea Co.* (1959), 22 Ill. App. 2d 179, 159 N.E.2d 833), where the bases of recovery for separate counts are different, dismissal of a count is appealable because it disposes of a distinct cause of action. *Cunningham; Rone v. Boncar Construction Co.* (1976), 45 Ill. App. 3d 1, 358 N.E.2d 1315.

This action involves a claim for injuries against one defendant brought in three separate counts based upon: (1) Structural Work Act; (2) negligence; and (3) strict products liability. Since only the products liability count was dismissed by the September 14 order, the inquiry is whether that count stated a cause of action distinct from the other two counts. The dismissed count quite clearly constituted a cause of action distinct from the statutory basis for recovery provided by the Structural Work Act. *Cf. Rone v. Boncar Construction Co.; Weber v. Northern Illinois Gas Co.* (1973), 10 Ill. App. 3d 625, 295 N.E.2d 41 (Structural Work Act and common law negligence constitute distinct causes of action).

The products liability count also constitutes a cause of action distinct from the negligence count. A complaint for negligence must set out the existence of a duty to the injured party, a breach of that duty and an

injury proximately resulting from that breach. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.) A plaintiff's contributory negligence will bar recovery in a negligence action in Illinois. *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305; *Swenson v. City of Rockford* (1956), 9 Ill. 2d 122, 136 N.E.2d 777.

On the other hand:

> "The elements of a cause of action in strict products liability, of course, differ markedly from their counterparts in negligence. To recover in strict liability, the injury must result from a condition of the product, the condition must be unreasonably dangerous and the condition must have existed at the time the product left the manufacturer's control." (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 210, 384 N.E.2d 368.)

A defendant's negligence need not be proved in a strict products liability suit. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182; *Fanning v. LeMay* (1967), 38 Ill. 2d 209, 230 N.E.2d 182.) In addition, contributory negligence is not a bar to recovery in a strict products liability action; rather, the plaintiff's conduct must amount to "assumption of the risk" to bar recovery. *Williams v. Brown Manufacturing Co.*

■■ In view of the different elements necessary to establish a proper claim in a negligence action as opposed to a strict products liability action, and the differing standards of plaintiff's conduct which will bar recovery, we conclude that the two claims constitute distinct causes of action. Since the September 14 order dismissed a distinct cause of action and contained the requisite finding, it was a final and appealable order.

■ Plaintiff argues that White Way's counsel pointed out the erroneous basis for the dismissal, *i.e.*, that the ladder was permanently affixed to the marquee and was not a product at all, and that Judge DeBow's statement "Take you all back where you started" indicated his intent to return all parties to their original positions, and implicitly to vacate the order of dismissal. However, plaintiff made no motion to vacate the order nor did he appeal it. White Way's post-trial motion did not include any request for relief from the order which dismissed its third-party count for indemnity based on the products liability count, nor was there any reference to the count in the post-trial order of October 13, 1977. Whatever may have been intended by that statement, it is clear that the written order entered on October 13, 1977, did not vacate the earlier order. Nor was the omission an inadvertent oversight, since the judge never orally vacated the order nor was he requested to by any post-trial motion. Since his failure to have the order vacated or to appeal bars plaintiff from pursuing the products liability count, the trial court improperly allowed its reinstatement before the second trial. *Sabath v. Mansfield* (1978), 60 Ill. App. 3d 1008, 377 N.E.2d 161.

Judge DeBow's *nunc pro tunc* order of September 13, 1978 (entered after the second trial), does not change this result. A *nunc pro tunc* order can be made at any time, even after the expiration of the term, to correct a final order or judgment to reflect what had been done, but not to alter the judgment actually rendered. (*Dauderman v. Dauderman* (1970), 130 Ill. App. 2d 807, 263 N.E.2d 708; *Kooyenga v. Hertz Equipment Rentals, Inc.* (1979), 79 Ill. App. 3d 1051, 399 N.E.2d 216.) A *nunc pro tunc* order may not be used to supply omitted judicial action, to correct judicial errors, or to cure a jurisdictional defect, and must be based on some note, memorandum, or a definite and certain record and may not be entered in reliance on the judge's memory alone. *Kooyenga; Spears v. Spears* (1977), 52 Ill. App. 3d 695, 367 N.E.2d 1004.

■■ Although Judge DeBow had a copy of the transcript of the October 11, 1977, proceedings before him at the entry of the *nunc pro tunc* order, there was nothing contained therein to indicate that an oral ruling had been made which vacated the order of dismissal. The statement "Take you all back where you started," is ambiguous at best as to what ruling was made. This phrase in and of itself does not establish that the judge thereby ruled or granted relief which had not been requested. The transcript does not establish a definite and certain record of any ruling to vacate the prior order of dismissal or the Rule 304 finding therein on which a *nunc pro tunc* order could be based. The judge's statement upon entry of the *nunc pro tunc* order that "This is what I intended to do. It's not clearly * * *. The idea was to put you back in the same position you were when the case was first assigned to me," demonstrates that omitted judicial action was being supplied solely in reliance on his memory. Accordingly, the *nunc pro tunc* order was improper and ineffective to establish what had purportedly been done. Therefore, since the products liability count was concluded by the dismissal order which was not appealed, the order at the second trial to reinstate the count and the judgment on that count cannot stand.

Moreover, even if the products liability count had been properly before the second trial court, White Way could not have been liable to plaintiff. In Illinois, a corporation which purchases the assets of another corporation is not generally liable for the debts and liabilities of the transferor in the absence of an agreement providing otherwise. (*Johnson v. Marshall & Huschart Machinery Co.* (1978), 66 Ill. App. 3d 766, 384 N.E.2d 141; *Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 388 N.E.2d 778.) The exceptions to the general rule include: (1) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (2) where the purchaser is merely a continuation of the seller; and (3) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. *Hernandez v. Johnson Press*

*Corp.; Domine v. Fulton Iron Works* (1979), 76 Ill. App. 3d 253, 395 N.E.2d 19.

■ The purchase agreement between Bunker Ramo and White Way specifically provided that Bunker Ramo would remain responsible for liabilities arising out of prior activities and negated any assumption of responsibility by White Way. Nor are any of the exceptions to the general rule applicable to the facts of this case.

The sale was not a consolidation or merger of Bunker Ramo and White Way as each continued their separate existence following the sale. Nor can it be said that a *de facto* merger occurred. The criteria for establishing a *de facto* merger as set forth in the *Hernandez* case are:

"(1) There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations.

(2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.

(3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.

(4) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation." 70 Ill. App. 3d 664, 667.

The facts in the instant case do not indicate a *de facto* merger occurred in 1970. First, it does not appear that there was a continuity of the management, directors or shareholders of the two corporations. Second, cash was exchanged for the purchase price instead of shares of stock in the new corporation substituted for that of the old corporation. Third, Bunker Ramo did not cease operations but continued on as a separate corporation. Fourth, although White Way did assume the service obligations of the prior corporation under its service contracts, this would only be consistent with the sale of an ongoing business.

White Way was not a mere continuation of Bunker Ramo since the shareholders, directors and managers of the two corporations were not the same. In addition, the transfer cannot be considered a fraudulent attempt to escape liability since adequate consideration was given before the accident occurred and therefore before any possible liability existed.

Finally, we do not agree with plaintiff that this is a proper case for the application of the "product-line theory" of liability set out in *Ray v. Alad*

*Corp.* (1977), 19 Cal. 3d 22, 560 P. 2d 3, 136 Cal. Rptr. 574. That approach has been rejected in four recent cases in this district. (*Johnson*; *Domine*; *Hernandez*; *Barron v. Kane & Roach, Inc.* (1979), 79 Ill. App. 3d 44, 398 N.E.2d 244.) Illinois courts have not adopted the reasoning of *Ray*, and we decline to do so. Furthermore, we note that unlike the facts in *Ray* where the predecessor corporation had been dissolved, Bunker Ramo has continued its existence and was available for suit. The continued existence of the predecessor corporation was considered in the *Domine* case as making *Ray* inapplicable and as an additional reason for rejecting it. (76 Ill. App. 3d 253, 257.) For the foregoing reasons, we find that even if the products liability count had been properly before the trial court, White Way could not be held liable for plaintiff's injuries. In view of this result, it is unnecessary to decide whether White Way is entitled to indemnity from the third-party defendant.

Accordingly, the order reinstating plaintiff's products liability count, the *nunc pro tunc* order, and the judgment rendered for plaintiff are reversed.

Orders and judgment reversed.

LORENZ and WILSON, JJ., concur.