MANH HUNG NGUYEN, Plaintiff-Appellant, *v.* JOHNSON MACHINE & PRESS CORPORATION *et al.*, Defendants-Appellees.

First District (4th Division)   No. 81-292

Opinion filed March 18, 1982.

Philip H. Corboy & Associates, of Chicago (Philip H. Corboy and Robert A. Clifford, of counsel), for appellant.

Raymond R. Cusack, of Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellee Amsted Industries, Inc.

JUSTICE LINN delivered the opinion of the court:

In 1978, the hands of plaintiff, Manh Hung Nguyen, were severed by a punch press manufactured by Bontrager Corporation. Bontrager had

manufactured the punch press in 1960 and had sold it to plaintiff's employer in 1962.

Following his injury, plaintiff brought this action in the circuit court of Cook County against numerous defendants seeking damages based on strict liability in tort. Two of the defendants, Amsted Industries, Inc., and South Bend Lathe, Inc., filed motions for summary judgment which were granted by the trial court. The court found no just reason to delay enforcement or appeal of its order. Plaintiff appealed.

The primary issue is whether Amsted or South Bend Lathe can be liable to plaintiff as successor corporation to the business of Bontrager.

We affirm.

BACKGROUND

The punch press involved in this case was sold under a trade name as a "Johnson" press. Presses of this kind were originally manufactured and sold by Johnson Machine and Press Corporation in Elkhart, Indiana. In 1956, Bontrager purchased the assets of Johnson for cash. As part of the purchase, Bontrager also received one share of stock in Johnson so that Bontrager could continue to manufacture and sell presses under the Johnson name.

In 1960, Bontrager manufactured and leased the punch press to a party not involved in this case. On February 5, 1962, this press was sold and delivered to plaintiff's employer. On August 29, 1962, Amsted and Bontrager entered into a purchase agreement under which Amsted was to purchase all the assets of Bontrager for approximately $1.2 million. Under the agreement, Bontrager promised to dissolve its corporate entity as soon as reasonably possible after the completion of the sale. Amsted was to assume the liabilities and obligations of Bontrager necessary for the uninterrupted continuation of the business. However, Amsted specifically refused to assume any liability resulting from injuries incurred from the use of presses manufactured and sold by Bontrager.

Following completion of the sale, Amsted continued the manufacture and sale of the Johnson presses using Bontrager's plant in Elkhart. This business was carried on by one of Amsted's divisions, South Bend Lathe. South Bend Lathe also had a plant in South Bend, Indiana, and after several years all of the operations carried out in Elkhart were transferred to the South Bend plant and the Elkhart plant was sold.

Though the parties disputed some of the facts, for the purpose of the summary judgment motion it was assumed that South Bend Lathe manufactured the Johnson presses by using the same employees, assets, physical location, and middle-level management personnel that Bontrager had used. However, none of the shareholders, directors, or officers of Bontrager became shareholders, directors, or officers of Amsted or South Bend Lathe.

Following the sale, Amsted informed Bontrager's and Amsted's customers that Amsted would thereafter be manufacturing and selling the Johnson presses. In 1964, Bontrager was voluntarily dissolved. Until 1975, Amsted, through its South Bend Lathe division, continued the manufacture and sale of the Johnson presses. In 1975, Amsted sold all of the assets involving the Johnson presses to LWE, Inc. Thereafter LWE, Inc., changed its name to South Bend Lathe, Inc. (the other defendant that was granted summary judgment by the trial court). In 1978, plaintiff was injured.

OPINION

I

It is admitted that if Amsted could not be liable in this case then neither could South Bend Lathe, Inc. Accordingly, we will discuss this case with a view towards Amsted's possible liability because of Amsted's purchase of Bontrager's assets.

Generally, a corporation that purchases the assets of another corporation is not liable for the debts and liabilities of the seller. (*Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 388 N.E.2d 778.) The recognized exceptions to this rule are when (1) an express or implied agreement of assumption exists; (2) the transaction amounts to a merger of the seller into the buyer or a consolidation of the two; (3) the buyer is a mere continuation of the seller such as when the buyer comes into existence pursuant to the reorganization of the seller; or (4) the transaction is fraudulent in that it was entered into to allow the seller to escape its liabilities. *People ex rel. Donahue v. Perkins & Will Architects, Inc.* (1980), 90 Ill. App. 3d 349, 413 N.E.2d 29.

Under the second exception above, our courts have recognized that a *de facto* merger is sufficient to allow liabilities of the seller to be imposed on the buyer. (*People ex rel. Donahue v. Perkins & Will Architects, Inc.* (1980), 90 Ill. App. 3d 349, 413 N.E.2d 29.) A *de facto* merger may occur when the following are present: (1) there is a continuity of the business enterprise between seller and buyer, including continuity of management, employees, location, and assets; (2) there is a continuity of shareholders, in that shareholders of the seller become shareholders of the buyer; (3) the seller ceases operations and dissolves as soon as possible after the transaction; and (4) the buyer assumes those liabilities and obligations necessary for the uninterrupted continuation of the seller's business. *People ex rel. Donahue v. Perkins & Will Architects, Inc.* (1980), 90 Ill. App. 3d 349, 413 N.E.2d 29; *Freeman v. White Way Sign & Maintenance Co.* (1980), 82 Ill. App. 3d 884, 403 N.E.2d 495.

■■ Of the above requirements, the continuity of shareholders is absent from this case because the assets were purchased for cash and not exchanged for stock or other securities. Under corporate principles, this

absence would be enough to defeat a finding of *de facto* merger and would prevent Amsted from being liable for any liabilities Bontrager may have had to its creditors or shareholders. (*People ex rel. Donahue v. Perkins & Will Architects, Inc.* (1980), 90 Ill. App. 3d 349, 413 N.E.2d 29.) Plaintiff, however, stresses that this is a strict liability case, and asks us to apply the law of strict liability and the policies underlying that law and reach the conclusion that continuity of shareholders should be ignored in determining whether Amsted should be liable. In essence, plaintiff asks us to create a special extension of the *de facto* merger doctrine that would apply to strict liability cases.

The step plaintiff asks us to take was taken by the Michigan supreme court in the case of *Turner v. Bituminous Casualty Co.* (1976), 397 Mich. 406, 244 N.W.2d 873. The reasoning in *Turner* is somewhat difficult to understand. The court declared, on the basis of facts similar to those here, that product liability law was the only law that governed the case. The court found that as far as plaintiff was concerned the problem was the same whether a corporate transfer was one involving an exchange of assets for cash or an exchange of stock. In either case, the plaintiff had nowhere to turn for a remedy except to the successor corporation. If the successor could not be liable, plaintiff would have no remedy.

Finding that one of the primary purposes of strict liability law was to impose liability on the party better able to gauge the risks and meet the costs of such liability, the court found the successor corporation could do so just as well as its predecessor. The successor could acquire insurance to protect against potential liability resulting from the predecessor's products and could pass the costs on to its customers by increases in the price of the products it manufactured. The successor could also estimate the potential costs of liability and see to it that such costs are considered during the negotiations for sale of the predecessor's assets.

The Michigan court also noted that the successor corporation, in an indirect way, benefitted from the predecessor's sales of the product because the successor would enjoy the goodwill built up by the predecessor and would be able more easily to sell the products it manufactured in the future than it could if it were just beginning the manufacture and sale of the product. Since one purpose of strict liability law is to impose liability on those who reap a benefit from the sale of the product that has caused injury, the court found that this transfer of goodwill was sufficient to establish that the successor corporation reaped a benefit from the sales of the product by its predecessor.

After the above discussion justifying the imposition of liability on the successor corporation based on strict liability principles, the Michigan court, in an unexplained about-face, went on to decide the case by

applying corporate law to the situation. The court merely extended the *de facto* merger doctrine by eliminating the requirement that there be a continuity of shareholders. Thus, if plaintiff could show (a) a continuity of the enterprise, including a continuity of management, employees, location, and assets; (b) a dissolution of the predecessor corporation as soon as possible after the transfer; and (c) an assumption by the successor of those obligations and liabilities necessary for the uninterrupted continuation of the predecessor's business, then a plaintiff could bring a strict liability action against the successor for injuries caused by the predecessor's product. Apparently, if any of these other elements for a *de facto* merger were not present, no action could be maintained. If strict liability principles were the only ones that applied, then how were the other elements of a *de facto* merger, a principle of corporate law, relevant to the issue of liability? If liability was to be imposed based on the court's reasoning under strict liability principles, then it should have been sufficient for a plaintiff to show merely that the successor produced the same product as its predecessor and that plaintiff had lost his remedy against the predecessor because of dissolution.

The weakness in the *Turner* analysis was pointed out by the New Jersey supreme court in *Ramirez v. Amsted Industries, Inc.* (1981), 86 N.J. 332, 431 A.2d 811, a case involving the same corporate transfer as involved in this case. The New Jersey court, also declaring that strict liability law was the only law to be applied, analyzed the problem under strict liability principles and reached the same conclusions involving those principles as the court in *Turner* did. The three factors pointed out in *Turner* for justifying liability, (a) plaintiff's inability to sue the predecessor; (b) the successor's ability to gauge the risks of liability and protect against them; and (c) the enjoyment by the successor of the goodwill built up by the predecessor, were deemed sufficient justification by the *Ramirez* court for imposing liability on the successor corporation. However, the *Ramirez* court rejected the result reached in *Turner* and instead held that liability could be imposed on the successor when the above factors were present as long as the successor continued to manufacture and sell the same product as the predecessor. The elements of a *de facto* merger were not to be used in determining liability.

The analysis and result reached in *Ramirez* were the same as the analysis and result reached in *Ray v. Alad Corp.* (1977), 19 Cal. 3d 22, 560 P.2d 3, 136 Cal. Rptr. 574. The *Ramirez* court expressly adopted the California court's decision in *Ray*. *Ray* has been specifically rejected by our courts. (*E.g.,* *Freeman v. White Way Sign & Maintenance Co.* (1980), 82 Ill. App. 3d 884, 403 N.E.2d 495; *Barron v. Kane & Roach, Inc.* (1979), 79 Ill. App. 3d 44, 398 N.E.2d 244; *Domine v. Fulton Iron Works* (1979),

76 Ill. App. 3d 253, 395 N.E.2d 19; *Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 388 N.E.2d 778.) The *Turner* case has not been specifically rejected by our courts.

Plaintiff's arguments in this case have taken peculiar turns. Before the trial court, plaintiff specifically denied that he was seeking to impose liability by having the court adopt the *Ray* analysis and result. Instead, the plaintiff essentially argued that the *Turner* analysis and result should be adopted. On appeal, the bulk of plaintiff's brief argues the adoption of the *Ray* and *Ramirez* cases. A small part of the brief seeks adoption of the *Turner* case. At oral argument, plaintiff again abandoned his argument to adopt *Ray* and *Ramirez*, and declared he was asking this court essentially to adopt the *Turner* case. In any event, we once again reject the analysis and result of *Ray*, and thus *Ramirez*, and also reject the imposition of liability in the manner in which the Michigan supreme court did in *Turner*.

Undeniably, one of the primary purposes of strict liability is to impose liability on those who create the risk of harm by being involved in the process which places the defective product in the stream of commerce. (*Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857.) It is quite obvious that Amsted did not create the risk of harm in this case because it had nothing to do with placing the product which injured plaintiff into the stream of commerce. The *Ray, Ramirez,* and *Turner* courts recognized that such was true in relation to successor corporations in general. For this reason, our courts have refused to adopt the doctrines of those other courts. (*Domine v. Fulton Iron Works* (1979), 76 Ill. App. 3d 253, 395 N.E.2d 19.) The *Ray, Ramirez,* and *Turner* courts found liability despite this reasoning. Those courts apparently deemed the successor's lack of involvement in creating the risk to be unimportant. If those courts were holding that the successor should be liable based on a theory that the successor had to assume the potential liability of the predecessor, then perhaps the successor's lack of involvement in creating the risk is unimportant. In such a case, the successor corporation should be liable because the predecessor corporation, whose liabilities the successor has assumed, could have been liable.

■■ However, if those courts were holding not that the successor was assuming the potential liabilities of the predecessor but was simply liable in its own respect, then the successor's innocence in creating the risk takes on fundamental importance. In this State, strict liability is still tort liability. Three elements are required for all tort liability: (a) plaintiff must have suffered an injury to an interest protected by law; (b) defendant must have had a duty to prevent the injury from occurring; (c) defendant must have breached that duty and the injury must have resulted from that breach. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 301

N.E.2d 307; *Braband v. Beech Aircraft Corp.* (1977), 51 Ill. App. 3d 296, 367 N.E.2d 118, *affirmed* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, *cert. denied* (1979), 442 U.S. 928, 61 L. Ed. 2d 296, 99 S. Ct. 2857.) One who has done nothing to create a risk of injury cannot usually be burdened with the duty of preventing that injury. In strict liability cases, our courts have found an absolute duty of prevention in those parties who can be found to have created the risk of injury by being involved in placing the defective product that has caused injury into the stream of commerce. (See *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155.) However, it is impossible to conceive of such a duty on the part of the successor corporation unless circumstances following the corporate transfer give rise to the duty. For example, if the successor corporation learns that one of its predecessor's products is defective and knows the location of that product, it may, though we do not so hold here, have a duty to warn of its defects before an injury occurs.

Thus, if the *Ray, Ramirez*, and *Turner* courts were simply creating liability in the successor corporation in its own respect, then those courts were creating liability without duty. They were not only extending the law of strict liability but abolishing strict liability as tort liability. It is unclear from the decisions in those cases whether the courts were creating liability in the successor corporation in its own respect or were merely holding that the successor had to assume the potential liability of the predecessor. If the former, then we must reject those decisions outright because this court will not create liability without duty. If the latter, then we have some fundamental problems with the reasoning of those cases.

To begin with, if the issue is solely one of the assumption of the predecessor's potential liability, we find it difficult to understand how corporate law can be ignored in making the decision. Strict liability law has no principles to determine successor corporate liability. If the issue is whether the successor owes an independent duty to the plaintiff, then strict liability principles could be used to determine the issue. However, when the issue is the successor corporation's assumption of the predecessor's liability, then corporate principles must guide the decision. A change in corporate law must be made to find liability. Hence, the issue is not whether strict liability law or corporate law should determine the outcome, but whether the policies and principles of strict liability justify a change in corporate law.

Plaintiff contends that we should merely extend the *de facto* merger doctrine by eliminating the requirement of continuity of shareholders. Plaintiff argues that the distinction between a transfer of assets for cash and a transaction involving the transfer of shares is specious, and thus the change in corporate law we have to make is not important, and the policies of strict liability justify the change.

Plaintiff misapprehends the role continuity of shareholders has in determining successor corporate liability under corporate law. A corporation when formed takes on a legal identity in much the same way as a person is a legal entity. Any two corporations, like any two persons, are considered to be separate and distinct from each other. Each has its own assets and liabilities, and one cannot usually be responsible for the liabilities of another just as one person cannot be responsible for the liabilities of another. Also, it is the corporate entity that has liabilities and not the business that the entity does (a lawyer, and not his law practice, is liable for his debts).

When one corporation merges into another, one corporate entity becomes a part of another. By statute, the successor corporation in a merger assumes the liabilities of the predecessor. (Ill. Rev. Stat. 1979, ch. 32, par. 157.94.) This is logical because the entity that had liabilities is carried over into the successor. This is just, because in a merger the shareholders of the predecessor become shareholders or security holders of the successor. (Ill. Rev. Stat. 1979, ch. 32, par. 157.61.) The shareholders are the ones who ultimately enjoy the profits and suffer the losses of the corporation, and the shareholders of one corporation should not be able to move as a group to another corporation, enjoy the continuing profits of the same business the corporation performed before merger, but escape all possible losses that accumulated before merger.

When one corporation merely sells its assets to another, the corporate entity that had liabilities does not become a part of the successor. All that has transferred is the business, which is not an entity that has liabilities. As entities with liabilities, the predecessor and successor remain separate and distinct. There is little logic and little justice in requiring the successor to assume the liabilities of the predecessor. The successor has paid a substantial price for the assets of the predecessor, and the law should not require the successor to pay a greater price, especially after the fact of sale when it is impossible for the successor to return to negotiations to change the price. Left behind is the predecessor corporation with money in hand. It should meet whatever liabilities it had with the price it has exacted. Its shareholders should ultimately suffer the losses from liabilities the corporation had, not the shareholders of the successor. Of course, if the predecessor chooses to dissolve, with dissolution comes the destruction of all pre-existing liabilities. (*Blankenship v. Demmler Manufacturing Co.* (1980), 89 Ill. App. 3d 569, 411 N.E.2d 1153.) Nevertheless, the legislature has given a party with a claim against the dissolving corporation two years following dissolution in which to assert his claim. (Ill. Rev. Stat. 1979, ch. 32, par. 157.94.) The dead should be allowed to rest, but not too quickly.

As can be seen from this discussion, continuity of shareholders, rather

than being a meaningless requirement in finding a *de facto* merger, is probably its most important element. Continuity of shareholders is the ultimate justification for allowing liabilities to carry over to the successor. The problem with corporate law in relation to strict liability in tort is not that it prohibits the transfer of potential liability, but that it allows the predecessor corporation, and the shareholders who should ultimately suffer the losses from the liabilities of that corporation, to escape strict liability in tort too soon after dissolution. Perhaps the solution to the problem would be for the legislatures of this and other States to require dissolving corporations to keep enough assets on hand or keep in force an insurance policy to meet potential liability for an extended time after dissolution. The failure to follow such a statute could be justification for transferring liability to the successor. However, the failure to enact such a statute is not justification for a court to transfer liability.

To allow successor corporate responsibility in cases such as these, we must make a significant change in corporate law. We must hold that the policies of strict liability justify a finding that, though a corporation has dissolved, potential liability in strict products liability should not dissolve with it and that another separate and distinct corporation should take on that liability. As previously noted, without continuity of shareholders, it does not appear just to require the successor corporation to assume the liabilities of the predecessor when it has already paid a substantial price for the assets of the predecessor. Thus, to make the change requested there must be ample justification for doing so. We now examine the points of justification offered by plaintiff.

The first justification offered by plaintiff for making this change is that plaintiff has lost his remedy against the predecessor and has no one to sue but the successor. As justification, this is meaningless. It is a statement of the problem, not the reason for solving the problem. Plaintiff has no remedy because corporate law dictates that the predecessor cannot be liable because it has dissolved. Strict liability came into being because of problems involving privity, contract disclaimer language, and plaintiff's inability to prove fault. (See *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.) Plaintiff had no remedy against the party who should have been responsible for providing one. This lack of remedy was the problem to be solved. To solve the problem by merely stating there was one could not justify its solution. Here, the problem is that corporate law denies plaintiff a remedy. To justify a change in corporate law, we cannot merely state the problem as its solution. Justification must come from elsewhere.

The second justification offered by plaintiff is that one of the policies of strict liability is to impose the costs of that liability on those better able to gauge the risks of that cost, insure against it, and pass the costs on to

consumers. This is the primary justification offered by the *Ray, Ramirez,* and *Turner* courts. This is, of course, a reason strict liability was created. The injured plaintiff should not have to bear the costs of his loss. Manufacturers can presumably pass those costs on to the rest of the society and insure against the risk. In essence, the manufacturer can afford it, the plaintiff cannot.

Standing alone without other justification, this principle can hardly be used to make a fundamental change in corporate law. We would be simply saying that the successor should be liable because it can afford liability. Even if it were sufficient justification, we do not know whether the proposition is true. Recent studies indicate that many manufacturers, and in particular small manufacturers, have a difficult problem obtaining products liability insurance and find it impossible to cover the risks by raising prices because they have to compete with larger manufacturers who can keep the price down. (Schwartz, *The Federal Government & the Product Liability Problem: From Task-Force Investigation to Decisions by the Administration,* 47 Cinc. L. Rev. 573 (1978); Note, *Products Liability and Successor Corporations: Protecting the Product User & the Small Manufacturer Through Increased Availability of Products Liability Insurance,* 13 U.C. Davis L. Rev. 1000 (1980).) Additionally, it is one thing to assume that a manufacturer can acquire insurance against potential liability for its own products and another to assume it can acquire such insurance for the products made by a different manufacturer. We do not know whether insurance companies will readily provide such insurance. We cannot assume it as fact.

When liability is imposed because a party has a duty to prevent injury, the ability to afford such liability is not of major importance. Thus, in most strict liability cases, the ability or inability of the defendant to bear the costs of that liability will not prevent liability. The defendant has violated a duty and should be made liable for the violation. However, when the issue is whether successor corporations should assume the liability of their predecessors, and the primary justification for the assumption is the successors' ability to bear the costs, then before the successors should be required to bear the costs we must be sure they can do so. Legislatures and not courts are in a much better position to determine the issue. Legislatures can do studies, gather evidence, hold hearings, and come to a decision. It is not a decision that can be made in a court proceeding where all of the parties truly involved are not represented.

The final justification offered by plaintiff is that defendant has reaped the benefits of its predecessor's accumulated goodwill and thus has reaped a benefit from the sale of the predecessor's products. Since liability should be imposed on those who benefit from the sale of the

defective product, plaintiff argues liability should be imposed in this case. If this were sufficient justification for imposing strict liability on the successor, then it would also be sufficient justification for imposing liability on successor corporations for all purposes. The *Ray, Ramirez,* and *Turner* cases seem to offer this justification simply to buttress the other arguments and show that a corporate relationship still exists between the successor and the predecessor so that liability can still exist. Perhaps those courts thought it irrelevant that the successor corporation pays a substantial price for the goodwill that has been accumulated, and the imposition of liability is a declaration that the successor should now pay a greater price than it agreed to pay. The successor cannot go back and amend the agreement. In any event, we believe the enjoyment of accumulated goodwill is not sufficient justification for making a significant change in corporate law.

■■ Thus, the arguments offered by plaintiff do not justify imposing the predecessor's potential liability on the successor. The successor corporation was not responsible for plaintiff's injury. The party that should be liable, Bontrager, cannot be liable because of the law of dissolution. Perhaps that law should be changed, but the change must come from the legislature. Because the party that should be held responsible cannot be is not a reason for holding that a party who should not be held responsible should be.

Accordingly, we hold that Amsted and South Bend Lathe, Inc., could not have been found liable to plaintiff based on a theory that Amsted, and thus South Bend Lathe, should assume the liabilities of Bontrager. The trial court's grant of summary judgment was proper.

## II

Plaintiff also alleges that Amsted should be liable based on a theory that Amsted had a duty to warn of the defects in Bontrager's products. Plaintiff alleges that Amsted had an independent duty to warn because it knew the Johnson Press in this case was defective and, since it had acquired all of Bontrager's records, it knew where the product could be found. We find that we need not address this issue.

■■ Plaintiff did not bring any action based on Amsted's duty to warn. The issue was never raised below. Thus, the issue has been waived. *Kubisen v. Chicago Health Clubs* (1979), 69 Ill. App. 3d 463, 388 N.E.2d 44.

Affirmed.

JIGANTI and ROMITI, JJ., concur.