**Raymond J. KLINE, et al.,**
**Plaintiffs-Appellants,**

v.

**JOHNS-MANVILLE, et al., Defendants,**

**and**

**Pittsburg-Corning Corporation,**
**Defendant-Appellee.**

Nos. 83–2682, 83–2686 to 83–2691.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 1984.

Decided Oct. 23, 1984.

Kenneth Carlson, Oakland, Cal., John Gigounas, Simpson & Gigounas, San Francisco, Cal., for plaintiffs-appellants.

James N. Penrod, Hassard, Bonnington, Rogers & Huber, San Francisco, Cal., for defendant-appellee.

Before TANG, CANBY and BEEZER, Circuit Judges.

CANBY, Circuit Judge:

This case presents the question whether California's rule imposing liability on a successor corporation for its predecessor's defective products applies when the successor purchases not the entire assets of the predecessor, but only one part of the predecessor's business. The district court refused to apply successor liability in cases of partial acquisition. We affirm.

## BACKGROUND

From 1936 until 1962, Unarco manufactured an asbestos pipe insulation product called "Unibestos." Unibestos was only one of hundreds of products manufactured by Unarco. In 1962, Unarco sold its entire Unibestos product line, including its know-how, manufacturing facilities, customer lists, and exclusive right to use the trade name "Unibestos," to the Pittsburg-Corning Corporation (PCC). PCC continued to manufacture Unibestos until 1972.

The seven plaintiffs involved in these cases filed separate suits against Unarco and PCC in 1981, 1982, and 1983, alleging various injuries sustained as a result of inhaling asbestos fibers during the installation and removal of Unibestos. On July 29, 1982, Unarco filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code. The filing of the petition imposed an automatic stay of all legal proceedings against Unarco. *See* 11 U.S.C. § 362(a).

To sidestep the effect of the automatic stay, the plaintiffs asked the district court

to impose liability on PCC for the injuries they suffered from the Unibestos manufactured by Unarco prior to the sale to PCC. PCC responded by filing a cross-motion for summary judgment on the ground that PCC was not subject to successor liability. The district court denied the plaintiffs' motion and granted PCC's motion for partial summary judgment. The plaintiffs appeal.

## ANALYSIS

### I. Successor Liability

As a general matter, California does not impose liability on a successor corporation that purchases the assets of a predecessor in an arm's length transaction. *See Ray v. Alad Corp.*, 19 Cal.3d 22, 28, 560 P.2d 3, 7, 136 Cal.Rptr. 574, 578 (1977); *Ortiz v. South Bend Lathe*, 46 Cal.App.3d 842, 846, 120 Cal.Rptr. 556, 558 (1975); *Schwartz v. McGraw-Edison Co.*, 14 Cal. App.3d 767, 780–81, 92 Cal.Rptr. 776, 783–84 (1971). "The courts have reasoned that to hold the successor liable ... would be to impose liability upon the successor for the totally independent acts of others." Note, *Ray v. Alad Corporation: Imposing Liability on the Successor Corporation for the Defective Products of the Predecessor Corporation*, 15 Cal.W.L.Rev. 338, 354 (1979). In *Ray*, however, the California Supreme Court created an exception to that rule, holding that if the predecessor liquidates itself after the sale of its entire assets, plaintiffs subsequently injured by products manufactured by the predecessor can recover against the successor. The holding in *Ray* was based upon:

(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading rule[sic], and (3) the fairness of requiring the successor to

assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business.

19 Cal.3d at 31, 560 P.2d at 9, 136 Cal.Rptr. at 580.

The rule announced in *Ray* is not directly applicable to this case because Unarco did not liquidate. We must decide, however, whether the principles announced in *Ray* nevertheless extend to this situation and render PCC liable. The plaintiffs argue that all three factors present in *Ray* are present here. They argue (1) that because of Unarco's petition for bankruptcy, they have no effective remedy against the predecessor; (2) that PCC can effectively assume a loss-spreading role; and (3) that because PCC benefited from the good will associated with the Unibestos trade name, successor liability would be fair. Accordingly, they urge application of *Ray* to their cases.

The district court rejected the plaintiffs' argument. It interpreted the first factor relied upon by the California Supreme Court in *Ray*—"the virtual destruction of the plaintiff's remedies ... caused by the successor's acquisition"—as requiring not only that the plaintiff lack an effective remedy against the predecessor, but also that "the successor corporation actually [have] played some role in curtailing or destroying the plaintiffs' remedies." The required causation was present in *Ray*. The successor's purchase of all the predecessor's assets led to the dissolution of the predecessor and the distribution of its assets to the shareholders. Those events in turn eliminated the possibility of recovery by the plaintiff.[1] Here, however, the district court found that PCC's purchase of

---

1. The court in *Ray* stated that even if the plaintiff could obtain a judgment against the dissolved predecessor, "he would face formidable and probably insuperable obstacles in attempting to obtain satisfaction of the judgment from former stockholders or directors." 19 Cal.3d at 32, 560 P.2d at 9, 136 Cal.Rptr. at 580. *See*

Comment, *Continuing Corporate Existence for Post-Dissolution Claims: The Defective Products Dilemma*, 13 Pac.L.J. 1227, 1240–41 (1982) (arguing that Cal.Corp.Code § 2011(a) prohibits plaintiffs with post-dissolution causes of action from recovering from the shareholders).

the Unibestos line did not cause Unarco to dissolve or deprive the plaintiffs of a source of recovery. On the contrary, after PCC's purchase Unarco remained a viable defendant and continued to do business as a large corporation with hundreds of other product lines. The district court therefore refused to extend *Ray* to the plaintiffs' cases.

■ The district court correctly interpreted *Ray* as requiring that the asset sale contribute to the destruction of the plaintiffs' remedies.[2] If no sale had occurred in *Ray*, the predecessor would have remained in business and the plaintiff could have sued it for recovery.[3] The sale had the effect of eliminating an avenue of recovery which the plaintiff would otherwise have had. Underlying the decision in *Ray* is the objective of alleviating that particular hardship. The court observed:

> [The] barriers to plaintiff's obtaining redress from the dissolved [predecessor] set him and similarly situated victims of defective products apart from persons entitled to recovery against a dissolved corporation on claims that were capable of being known at the time of its dissolution. Application to such victims of the general rule that immunizes [the] successor from the general run of [the predecessor's] debts would create a far greater likelihood of complete denial of redress for a legitimate claim than would the rule's application to most other types of claimants.

*Id.* at 32–33, 560 P.2d at 10, 136 Cal.Rptr. at 581.

■ Here, as the district court found, the critical hardship—the asset sale's elimination of a remedy that would otherwise exist—is missing. If there had been no sale of the Unibestos product line to PCC, the plaintiffs would not be in any better position than they are now, for it was not the sale to PCC that caused Unarco to petition for reorganization. Unarco filed its petition twenty years after the sale to PCC, and did so for reasons unrelated to the sale. Absent the sale, therefore, the plaintiffs would have had the same right they now have: the right to file claims against Unarco in the bankruptcy proceedings. Unlike the plaintiff in *Ray*, who sought only to avoid a worsening of his position by reason of the sale of assets, the plaintiffs here seek to better theirs. They desire an additional remedy—one not accorded to any other creditor of Unarco and one that plaintiffs would not have had in the absence of the sale to PCC—namely, the right to pursue a third party for satisfaction of their claims against Unarco. Nothing in *Ray* supports awarding them that preference. The district court was therefore correct in holding that the first factor of the *Ray* analysis militated against successor liability.

The second consideration set forth in *Ray*, the successor's liability to spread the risk of loss, also weighs against successor liability in this case. PCC ceased to manufacture and market Unibestos in 1972, approximately ten years before plaintiffs filed these actions. There is no way now to spread the unforeseen loss among all purchasers and users of that product. In *Ray*, by contrast, the successor had "the opportunity formerly enjoyed by Alad I of passing on to purchasers of new 'Alad' products the costs of meeting these risks." *Ray*, 19 Cal.3d at 33, 560 P.2d at 10, 136 Cal.Rptr. at 581.

The final *Ray* factor concerns the fairness of requiring the successor to assume a liability as a burden attached to the origi-

---

**2.** We review district court interpretations of state law de novo. *In re McLinn*, 739 F.2d 1395 (9th Cir.1984) (en banc).

**3.** Similarly, in *Rawlings v. D.M. Oliver, Inc.*, 97 Cal.App.3d 890, 159 Cal.Rptr. 119 (1979), relied on by plaintiffs, the predecessor would have remained in business and been clearly subject to suit if it had not been for the sale of the entire business. The sale placed the plaintiff in a worse position. Moreover, the entire business was then operated by the successor, utilizing the good will of the predecessor and acquiring its entire cost-spreading capability. *Id.* at 901, 159 Cal.Rptr. at 124. *Rawlings* is therefore comparable to *Ray* and distinguishable from the present case.

nal manufacturer's good will. On balance, this factor, too, militates against liability of PCC. While it is true that PCC enjoyed whatever good will attached to the name "Unibestos," the product line was unprofitable. PCC did not avail itself of the good will attaching to the Unarco name, and took pains to make clear that Unibestos was being manufactured by PCC. There was no parallel to the situation in *Ray*, where the successor benefited from the good will attached to the entire business of the predecessor. Finally, as we have already pointed out, imposing liability on PCC would place plaintiffs in a better position than they would occupy if the sale had never occurred. Fairness consequently does not favor successor liability in this case.

In light of the three factors set forth in *Ray*, then, the district court was correct in refusing to extend the rule of *Ray* to this case.

## II. Contractual Assumption of Successor Liability

The plaintiffs argue that there is a material factual dispute that rendered summary judgment improper. They contend that Unarco's agreement to indemnify PCC for claims arising from pre-sale operations by Unarco somehow raises an issue of fact as to whether PCC assumed liability for such claims. The plaintiffs, however, did not raise this issue before the district court.

■ "An appellate court will not review an issue not raised nor objected to below unless necessary to prevent manifest injustice." *Komatsu, Ltd. v. States Steamship Co.*, 674 F.2d 806, 812 (9th Cir.1982). In the *Komatsu* case, there was no "manifest injustice" because the appellant did not provide a reason for its failure to raise the issue below. *Id.* The same situation exists here. Therefore, we will not consider the plaintiffs' claim regarding PCC's contractual assumption of successor liability.

The judgment of the district court is affirmed.