778 F.2d 533
 Prod.Liab.Rep.(CCH)P 10,802
Stephanie NELSON, Plaintiff-Appellant,
v.
TIFFANY INDUSTRIES, INC., Superior Equipment Manufacturing
Company, Inc., and Moody Manufacturing Company,
Defendants-Appellees.
 No. 85-5605.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 10, 1985.
Decided Dec. 12, 1985.
 
 Jonathan C. Solish, Los Angeles, Cal., for plaintiff-appellant.
 Robert F. Donohue, Alan R. Zuckerman, Hagenbaugh & Murphy, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN, ALARCON, and POOLE, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 Appellant Stephanie Nelson appeals from the dismissal of her claim following the entry of a summary judgment in favor of appellees Tiffany Industries, Inc. (hereinafter Tiffany) and Superior Manufacturing Co., Inc. Nelson brought this diversity action alleging injuries resulting from a grain auger accident in Minnesota. Her complaint sets forth a theory of strict tort liability based on defective design and manufacture of the grain auger, a failure to warn, and an "unreasonable risk of harm." The issues on appeal are: (1) did the district court properly find that California conflict of law rules mandate application of California substantive law in this matter; and (2) did the district court properly find that the exception to the general rule against imputing liability to a successor corporation announced in Ray v. Alad Corp., 19 Cal.3d 22, 560 P.2d 3, 136 Cal.Rptr. 574 (1977) does not apply to this case because the appellees' purchase of the predecessor corporation's assets pursuant to a bankruptcy sale did not contribute to or cause the destruction of Nelson's remedies against the predecessor. We affirm the district court's order with respect to the first issue and reverse and remand on the second issue.
 
 A. CHOICE OF LAW
 
 2
 Appellees contend the district court should have applied the substantive law of Illinois rather than California law.[1] Because this diversity action was filed in California, the trial court must look to that state's choice of law rules to determine the controlling substantive law. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941). We review district court interpretations of state law de novo. In re McLinn, 739 F.2d 1395, 1403 (9th Cir.1984) (en banc).
 
 
 3
 California has adopted the governmental interest approach to conflict of law questions. In re Air Crash in Bali, Indonesia on April 22, 1974, 684 F.2d 1301, 1307 (9th Cir.1982). California will decline to apply its own law to a case brought in California only if it is shown that another state has a greater interest in having its law applied. Id., citing Hurtado v. Superior Court, 11 Cal.3d 574, 581, 522 P.2d 666, 670, 114 Cal.Rptr. 106, 110 (1974).
 
 
 4
 California has a strong state policy of protecting its citizens from injuries due to defective products and has expanded successor liability in certain circumstances. See Ray, 19 Cal.3d 24, 560 P.2d 3, 136 Cal.Rptr. 575 (California adopts strict products liability for successor corporations); Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 377 P.2d 897, 27 Cal.Rptr. 697 (1963) (California adopts strict products liability). The policy of Illinois, on the other hand, generally limits the liability of successor corporations. See Manh Hung Nguyen v. Johnson Machine & Press Corp., 104 Ill.App.3d 1141, 60 Ill.Dec. 866, 433 N.E.2d 1104 (1982) (expressly rejected the Ray exception and refused to expand successor liability beyond the limits of the general rule).
 
 
 5
 The appellant in this case is a California citizen who was injured in Minnesota. Appellees are Missouri corporations which conduct business in California. The only tie to Illinois is Tiffany's purchase of all of Moody Manufacturing Company's (hereinafter Moody) assets in a bankruptcy sale in Illinois. The state of Illinois has no interest in limiting the liability of Missouri corporations. California, however, has a strong interest in protecting its citizens from defective products distributed in that state. Application of California law in this case furthers that state's strong public policy and does not impair any interests or policies of the state of Illinois. Thus, the district court correctly applied California law to this matter.[2]
 
 B. SUCCESSOR LIABILITY
 
 6
 The district court granted appellees' motion for summary judgment on the ground that the Ray exception to the general rule limiting successor liability does not apply to the facts of this case. Generally, California does not impose liability on a successor corporation that purchases the assets of a predecessor in an arm's length transaction.[3] Kline v. Johns-Manville, 745 F.2d 1217, 1219 (9th Cir.1984). In Ray, however, the California Supreme Court created an exception to that rule. In holding a successor corporation liable for the defective product of the predecessor corporation, the Ray court concluded
 
 
 7
 that a party which acquires a manufacturing business and continues the output of its line of products under the circumstances here presented assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired.
 
 
 8
 Ray, 19 Cal.3d at 34, 560 P.2d at 11, 136 Cal.Rptr. at 582.
 
 
 9
 The circumstances presented in Ray were as follows:
 
 
 10
 1. The successor corporation (Alad II) purchased the entire assets of the predecessor corporation (Alad I) which previously had manufactured the defective ladder;
 
 
 11
 2. Pursuant to a written sales contract, Alad I agreed " 'to dissolve its corporate existence as soon as practical and [to] assist and cooperate with [Alad II] in the organization of a new corporation to be formed by [Alad II] under the name "ALAD CORPORATION." ' ";
 
 
 12
 3. After the acquisition of Alad I, Alad II continued to manufacture the same line of ladders under the Alad name, using the same manufacturing equipment and designs and the same personnel;
 
 
 13
 4. Alad II continued to solicit Alad I's customers through the same sales representatives;
 
 
 14
 5. There was no outward indication of a change in the ownership of the business;
 
 
 15
 6. There was no express or implied agreement to assume liability for injury from defective products previously manufactured by Alad I;
 
 
 16
 7. The record did not disclose whether Alad II had liability insurance to cover the plaintiff's claims;
 
 
 17
 8. The plaintiff's practical ability to recover from Alad I as manufacturer of the defective product was vitiated by the purchase of Alad I's tangible assets, trade name and good will and the dissolution of Alad I within two months thereafter. Id. at 24-31, 560 P.2d at 4-9, 136 Cal.Rptr. at 575-80.
 
 
 18
 The California Supreme Court imposed strict tort liability on Alad II for the defective ladder manufactured by Alad I. The court reasoned:
 
 
 19
 Justification for imposing strict liability upon a successor to a manufacturer under the circumstances here presented rests upon (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business.
 
 
 20
 Id. at 31, 560 P.2d at 8-9, 136 Cal.Rptr. at 579-80. The court emphasized throughout the opinion that it applied the exception "under the narrow circumstances here presented...." Id. at 25, 560 P.2d at 5, 136 Cal.Rptr. at 576; see also id. at 31, 34, 560 P.2d at 8-9, 11, 136 Cal.Rptr. at 579-80, 582.
 
 
 21
 In a recent decision of this court, Kline v. Johns-Manville, 745 F.2d 1217 (9th Cir.1984), we determined that, for the Ray exception to apply, the asset sale to the successor corporation must "contribute to the destruction of the plaintiff's remedies." Id. at 1220. In Kline, the predecessor corporation Unarco manufactured an asbestos pipe insulation product called "Unibestos." In 1962, Unarco sold its entire Unibestos line, including technical know-how, manufacturing facilities, customer lists, and the exclusive right to use the trade name "Unibestos" to the Pittsburg-Corning Corporation (PCC). PCC continued to manufacture Unibestos until 1972. Id. at 1218.
 
 
 22
 In 1981, 1982, and 1983 seven plaintiffs filed suits against Unarco and PCC alleging various injuries from exposure to asbestos fibers during the installation and removal of Unibestos. On July 29, 1982, Unarco filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code which triggered an automatic stay on all lawsuits against Unarco. See 11 U.S.C. Sec. 362(a) (1982). To sidestep the effect of the automatic stay, the plaintiffs asked the district court to impose liability on PCC for the injuries they suffered from the Unibestos manufactured by Unarco prior to the sale to PCC. The district court denied the plaintiffs' motion for summary judgment and granted PCC's motion for partial summary judgment, holding that successor liability under Ray did not apply to PCC. Kline, 745 F.2d at 1218-19.
 
 
 23
 The plaintiffs in Kline urged application of Ray to their cases, arguing that: (1) because of Unarco's petition for bankruptcy, they had no effective remedy against the predecessor; (2) PCC could effectively assume a loss-spreading role; and (3) because PCC benefited from the good will associated with the Unibestos trade name, successor liability would be fair. Kline, 745 F.2d at 1219.
 
 
 24
 We rejected the plaintiffs' argument in Kline. We interpreted the first factor in Ray--" 'the virtual destruction of the plaintiff's remedies ... caused by the successor's acquisition'--as requiring not only that the plaintiff lack an effective remedy against the predecessor, but also that 'the successor corporation actually [have] played some role in curtailing or destroying the plaintiffs' remedies.' " Kline, 745 F.2d at 1219-20.
 
 
 25
 The required causation was present in Ray. There the successor purchased the predecessor's assets pursuant to a written sales contract that required the dissolution of the predecessor. The purchase of all assets and the required dissolution eliminated the possibility of recovery from the predecessor. In Kline, however, we found the essential element of causation to be missing. Kline, 745 F.2d at 1220. PCC's purchase of the Unibestos line did not cause Unarco to dissolve or deprive the plaintiffs of a source of recovery. This court stated: "If there had been no sale of the Unibestos product line to PCC, the plaintiffs would not be in any better position than they are now, for it was not the sale to PCC that caused Unarco to petition for reorganization." Id.
 
 
 26
 Appellant also urges application of Ray to the instant matter. The district court rejected Nelson's argument and held as a matter of law that successor liability under Ray did not lie under the circumstances of this case. Because this case involves a predecessor's total dissolution following bankruptcy and a subsequent purchase of its entire assets by the successor, it presents novel questions not addressed by the court in Kline.[4] We review the district court's grant of summary judgment and its interpretation of state law de novo. Friends of Endangered Species, Inc. v. Jantzen, 760 F.2d 976, 981 (9th Cir.1985); In re McLinn, 739 F.2d 1395, 1403 (9th Cir.1984) (en banc).
 
 
 27
 Moody manufactured the grain auger in question in 1966. In January, 1970, Moody filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code. In April, 1970, Tiffany purchased all of Moody's assets in a bankruptcy court-approved sale.[5] Moody did not emerge from reorganization proceedings as a viable corporate entity. Seven years later Nelson was injured.
 
 
 28
 Nelson goes to great lengths to analogize the facts of this case to the "narrow circumstances" in Ray. Indeed, there are a number of factual similarities between the two cases.[6] However, Moody's voluntary petition for reorganization, as contrasted with the contractual requirement that Alad I dissolve its corporate existence as a condition of the sale of its assets in Ray, clearly distinguishes the two cases. In Ray the California Supreme Court recognized that the requirement that Alad I cease its corporate existence destroyed the plaintiffs' remedies. In this case, however, Moody had filed its petition and was no longer in business before the bankruptcy court approved the sale of assets to Tiffany. Thus, it was Moody's bankruptcy and not Tiffany's subsequent purchase of the assets that destroyed Nelson's remedies.[7] Even if there had been no sale of assets to Tiffany, Nelson would not be in any better position today to proceed against Moody. Kline, 745 F.2d at 1220.
 
 
 29
 Absent an agreement that causes the plaintiff's loss of remedy, the Ray exception to the general rule that a successor corporation is not liable for its predecessor's torts does not apply. Where, as here, the predecessor corporation files a voluntary petition in bankruptcy before the successor's purchase of assets, the essential element of causation will be shown by evidence of a collusive agreement to use bankruptcy proceedings to shield the successor corporation from the predecessor's liabilities.
 
 
 30
 Nelson asserts that the facts presented to the district court show there was such a collusive agreement between Moody and Tiffany. She contends that the record shows that prior to Moody's bankruptcy, appellees had agreed to purchase Moody but "[a]t the last minute, Tiffany requested that Moody file reorganization proceedings and altered the original transaction by purchasing assets only out of the reorganization." In support of this contention, Nelson refers us to the deposition testimony of Clarence Hendrian, a former employee of Superior Manufacturing Company, Inc., Moody, and Tiffany. Appellees objected to this testimony as inadmissible hearsay. The district court did not rule on this objection. The transcript of the proceedings indicates that the district court did not address the possibility that a collusive agreement between the successor and the predecessor may have destroyed Nelson's remedies. Instead, the district court concluded that a mere showing that bankruptcy proceedings had been filed "wipes out" tort liability of the predecessor corporation.
 
 
 31
 It is our view that the California Supreme Court's decision in Ray does not apply where there is a good faith dissolution in bankruptcy which is not intended to avoid future tort claims against the predecessor. Under such circumstances, the successor corporation has not contributed to or caused the destruction of the plaintiff's remedies. On the record before us, however, it is not clear whether the district court considered the evidence offered by the plaintiff for the purpose of showing that Moody filed its petition pursuant to a collusive agreement with Tiffany. If the evidence shows that Tiffany induced Moody to file for bankruptcy to avoid future tort liability, the Ray exception to the general rule would be applicable. Because this critical factual issue was not considered or resolved by the district court, we must reverse the order granting summary judgment.
 
 
 32
 The district court is instructed to consider any relevant evidence which may be offered by both sides concerning the part played by Tiffany, if any, in inducing Moody to file a petition for reorganization and whether such conduct, if proved, caused or contributed to the loss of plaintiff's remedies. The district court shall also make written findings concerning this issue. If, upon consideration of such evidence, the district court determines that there is a material issue of fact concerning the causation question, it should proceed to a trial on the merits. This matter is AFFIRMED as to the choice of law issue and REVERSED and REMANDED as to the successor liability issue.
 
 
 
 [1]
 The parties agree that the district court applied California substantive law below. The transcript of the hearing on the summary judgment motions supports this conclusion. However, the district court's Findings of Fact and Conclusions of Law are unclear concerning the judge's actual ruling on the choice of law question. The Conclusions of Law provide in relevant part:
 
 
 [4]
 In California, when a conflict of law problem has been identified, the "governmental interest" test is applied to resolve the conflict. This test requires that any conflict be resolved by applying the law of the State whose interest would be more impaired if its law were not so applied. Bernhard v. Harrah's Club, 16 Cal.3d 313, 320 [128 Cal.Rptr. 215, 546 P.2d 719] (1976). The facts of this case indicate that the laws of the states of Illinois, Missouri, Minnesota and California could apply to this matter. However, the interests of the State of California would be least impaired if its laws were not so applied
 
 
 [5]
 If California law is not applied to this action, moving defendants are not liable under the laws of Illinois, Minnesota, or Missouri, which hold that a corporation that purchases all of the assets of another corporation is not responsible for the selling corporations liability in the absence of a statute or contract providing otherwise. Nugyen v. Johnson Machine and Press Corporation, [104 Ill.App.3d 1141, 60 Ill.Dec. 866], 433 N.E.2d 1104 (1982), Brockmann v. O'Neill, 565 S.W.2d 796 (1978), J.F. Anderson Lumber Co. v. Meyers, [296 Minn. 33], 206 N.W.2d 365 (1973)
 
 
 [6]
 Even if California law were to apply, moving defendant's would not be liable to plaintiff as successors to the alleged manufacturer of the grain auger. Kline v. Johns-Manville & Pittsburgh-Corning Corporation, (9th Cir. Oct. 31, 1984) 84 Daily Journal D.A.R. 3599. Ray v. Alad Corporation, 19 Cal.3d 22 [136 Cal.Rptr. 574, 560 P.2d 3] (1977)
 On the basis of the transcript of the proceedings below and the arguments presented on appeal, we assume the district court did in fact apply California substantive law.
 
 
 [2]
 Appellee's argument that application of California law would undermine the finality of the order of the federal bankruptcy court in Illinois lacks merit. Only counterveilling state policies are relevant in determining which state has a greater governmental interest in having its law applied in a federal diversity case. See Hurtado v. Superior Court, 11 Cal.3d 574, 522 P.2d 666, 114 Cal.Rptr. 106 (1974)
 
 
 [3]
 The traditional rule was stated in Ray as follows:
 [T]he purchaser does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of the assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.
 Ray, 19 Cal.3d at 28, 560 P.2d at 7, 136 Cal.Rptr. at 578 (citations omitted).
 
 
 [4]
 Kline involved only a partial acquisition by the successor 20 years before the predecessor filed a petition for reorganization. The successor in Kline purchased only one product line and, for 20 years after the purchase the predecessor remained a viable defendant, continuing to do business as a large corporation with hundreds of other product lines. Kline, 745 F.2d at 1220
 
 
 [5]
 After Tiffany purchased Moody's assets, a wholly-owned division of Tiffany, Superior Manufacturing Co., continued to manufacture Moody's line of grain augers. In 1981, Superior was incorporated as a division of Tiffany, appellee Superior Manufacturing Co., Inc., and continues to manufacture grain augers
 
 
 [6]
 For example, in both cases the successor corporation purchased the entire assets of the predecessor corporation which previously had manufactured the defective product. The successor corporation in both cases continued to manufacture the same product under the same name, using the same manufacturing equipment and designs. In addition, there was no outward indication of a change in ownership of the business in either case
 
 
 [7]
 Nelson argues that a "brief baptism" in chapter proceedings does not insulate appellees from successor liability under Ray. She cites a Fifth Circuit case, In re Mooney Aircraft, Inc., 730 F.2d 367 (5th Cir.1984), in support of this proposition. Nelson's reliance on Mooney is misplaced. The Fifth Circuit in Mooney held that the bankruptcy court did not have jurisdiction under the Anti-Injunction Act, 28 U.S.C. Sec. 2283 (1982), to reopen the estate of a bankrupt company and to enjoin state wrongful death proceedings against the purchaser of the bankrupt's assets. The holding in Mooney addressed only the bankruptcy court's jurisdiction over the underlying tort case. The language in Mooney relied on by Nelson, that the "bankruptcy court could not sell free and clear of claims asserted by the victims of an accident which did not occur until five years later," and that "the injunction sought by [the successor] against the California state court proceedings is entirely unnecessary to protect or effectuate the bankruptcy court's prior judgment, because that judgment was ineffective as to the [victims'] claims," is dicta and unnecessary to the court's holding. See id. at 375