**Christine MYERS, as guardian ad litem for Lacie Myers, a minor, individually, Plaintiff,**

v.

**UNITED STATES of America; OHM Remediation Services, Inc.; It Corporation; The Shaw Group; and Shaw Environmental, Inc., Defendants.**

**No. 02CV1349K (AJB).**

United States District Court, S.D. California.

April 10, 2003.

Scott Allen, Cox and Moyer, San Francisco, CA, for plaintiff.

U.S. Attorney CV, U.S. Attorneys Office, Southern District of California, Civil Division, San Diego, Kirsten L. Wilkerson, Gay Elizabeth Kang, John Adam Bain, U.S. Department of Justice, Washington, DC, J L Sean Slattery, Gordon and Rees, San Diego, CA, Andrea E. Neuman, Gib-

son Dunn and Crutcher, Irvine, CA, for defendants.

ORDER GRANTING DEFENDANT'S THE SHAW GROUP AND SHAW ENVIRONMENTAL, INC., MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6) WITH PREJUDICE

KEEP, District Judge.

Defendant The Shaw Group and Defendant Shaw Environmental, Inc., ("Defendant" or "Shaw")[1] filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on February 4, 2003. Plaintiff filed an opposition on February 24, 2003, to which Defendants replied on March 3, 2003. Oral arguments were heard on March 26, 2003. Both parties proceed through counsel.

## I. Background

The following is taken from the complaint and the parties' pleadings and is not to be construed as findings of fact by the court.

### A. Original Personal Injury Suit filed in the Southern District of California

On July 10, 2002, Plaintiff filed a complaint in this court against defendants United States of America, and OHM Remediation Services, Inc. ("OHM"), alleging the following causes of action: (i) negligence; (ii) nuisance; (iii) trespass; and (iv) strict liability based on conducting an ultrahazardous activity.

The factual underpinning of the complaint are as follows: between January 1999 and April 2000, Plaintiff and her family lived on the Wire Mountain Family Housing Complex in Camp Pendleton, United States Marine Corps Base in San Diego County, California. According to the complaint, the Box Canyon Landfill, located near Plaintiff's home, and the neighborhood school and playground, was filled with toxic materials, including thallium. Plaintiff alleges that the defendants activities caused Plaintiff to be exposed to hazardous substances, including thallium. As a result of this toxic exposure, Plaintiff suffered injuries including neurological damage, gastrological disorders, alopecia (loss of all body hair) and severe emotional distress.

### B. Bankruptcy Proceeding in Delaware

Unbeknownst to Plaintiff, on January 16, 2002, OHM and the IT Corporation ("IT") filed voluntary petitions for relief under Chapter 11 of Title 11 of the U.S.Code ("Bankruptcy Code").

On April 5, 2002, the Bankruptcy Court of Delaware approved the agreement in which Shaw purchased substantially all of IT's assets. Neither OHM nor IT served Plaintiff with notice of the bankruptcy proceedings, and when Plaintiff became aware of this, she moved the bankruptcy court to excuse the late filing of proof of claim, and relief from the automatic stay to fully prosecute the personal injury lawsuit. In November of 2002, Honorable Mary F. Walrath, U.S. Bankruptcy Judge for the District of Delaware granted both of Plaintiff's motions.

### C. Amended Complaint in the Southern District of California

On January 6, 2003, Plaintiff filed a first amended complaint ("FAC") adding the

---

1. Although the pleadings refer to The Shaw Group and Shaw Environmental, Inc. as two separate entities, they are referred to throughout the pleadings and the underlying documents as one single entity, "Shaw." For purposes of simplicity, the court will refer to both The Shaw Group and Shaw Environmental, Inc. as one Defendants, using the name Shaw.

following defendants: IT Corporation, The Shaw Group and Shaw Environmental, Inc.

Shaw now moves to dismiss the complaint for the following three reasons: (1) the April 5, 2002 Order of the Delaware Bankruptcy Court expressly provided that Shaw acquire IT and OHM assets "free and clear" of Plaintiff's claim; (2) the Bankruptcy Code preempts claims of successor liability; and (3) asset purchasers, such as Defendant, are not subject to claims of successor liability under California law. Plaintiff opposes all of these arguments.

## II. Motion to Dismiss

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which relief can be granted. Such a dismissal can be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988). In applying this standard, the court must treat all of plaintiff's factual allegations as true. *See Experimental Eng'g. Inc. v. United Technologies Corp.,* 614 F.2d 1244, 1245 (9th Cir.1980). However, the court does not have to accept as true conclusory allegations that contradict facts which may be judicially noticed or which are contradicted by documents referred to in the complaint. *See, e.g., Steckman v. Hart Brewing Inc.,* 143 F.3d 1293, 1295–1296 (9th Cir.1998). To dismiss with prejudice, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proven. *See Reddy v. Litton Indus.,* 912 F.2d 291, 293 (9th Cir.1990), *cert. denied,* 502 U.S. 921, 112 S.Ct. 332, 116 L.Ed.2d 272 (1991).

## B. Discussion

Defendant presents three arguments as to why the complaint should be dismissed against it pursuant to Rule 12(b)(6): (1) the Order of the Bankruptcy Court expressly provided that Shaw acquired IT and OHM assets "free and clear" of Plaintiff's claim; (2) the Bankruptcy Code preempts claims of successor liability; and (3) asset purchasers, such as Defendant, are not subject to claims of successor liability under California law. The court will address each argument in turn.

### 1. The Bankruptcy Court Sale Order

Defendant argues that the Delaware Bankruptcy Court's April 5, 2002 Order expressly provided that it acquired the IT and OHM assets "free and clear" of Plaintiff's claim. Motion at 5. After noting some of the bankruptcy court's findings, Defendant highlights the following portion of the Order:

> Shaw would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Assets to Shaw and the assignment of the Assumed Contracts to Shaw was not free and clear of all Claims of any kind or nature whatsoever, or if Shaw would, or in the future could, be liable for any of the Claims. Deft. Request for Judicial Notice ("RJN"), Exh. A at 8 ¶ O.

Shaw argues that the Bankruptcy Court "repeatedly held that the pre-closing date liabilities of IT and OHM would not, and could not, become liabilities of Shaw," highlighting the following language:

> The Debtors [IT and OHM] may sell the Assets free and clear of all Claims of any kind of nature whatsoever because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)–

(5) has been satisfied. Deft. RJN, Exh. A at 8 ¶ P.

The (i) transfer of the Assets to Shaw and (ii) assumption and assignment to Shaw of the Assumed Contracts and Liabilities, except as otherwise agreed by Shaw, will not subject Shaw to any liability with respect to the operation of the Debtor's business prior to the Closing Date. Deft. RJN, Exh. A at 9 ¶ Q. The transfer of the Assets pursuant to the Sale shall not subject Shaw to any liability, except as set forth in the Agreement, with respect to the operation of the Debtor's [IT and OHM] business prior to the Closing Date. Deft. RJN, Exh. A at 13 ¶ 7.

Additionally, Shaw argues that not only did the "Bankruptcy Court hold that Shaw acquired the assets 'free and clear' of any claims, including by its terms the ones Plaintiff asserts here, it held that any such claims were 'discharged' by operation of law, and that any purported claimant against IT and OHM was estopped and forever barred from asserting a claim against Shaw." Motion at 8–9. Moreover, Shaw contends that Plaintiff is "bound" by this Order, which held that the "terms and provisions of the Agreement and this Sale Order shall be binding in all respects upon . . . the Debtors, their estates, and their creditors . . . ." Motion at 9.

Finally, Shaw argues that the Bankruptcy Court has expressly retained jurisdiction, noting the following language of the Order: "This Court retains jurisdiction to enforce and implement the terms and provisions of the Agreement . . . including, but not limited to, retaining jurisdiction to . . . protect Shaw against . . . any Claims in the Debtors or the Assets, of any kind or nature whatsoever, attaching to the proceeds of the Sale." Deft. RJN, Exh. A at 27 ¶ 40. Shaw contends that the proper forum for Plaintiff is the Bankruptcy Court, and Plaintiff's current complaint against Shaw "is in direct violation of [the Bankruptcy Court] Order and [is] improper and should thus be dismissed." Motion at 11.

Plaintiff argues that there are three reasons why the Bankruptcy Court Order does not protect Shaw from successor liability.

### a. The Amendment to the Asset Purchase Agreement

First, Plaintiff argues that one week after the Sale Order of IT's assets, Shaw acquired OHM's assets through a different bankruptcy proceeding. According to Plaintiff, Shaw and IT executed an amendment to the Asset Purchase Agreement, by which a company by the name of Beneco Enterprises, Inc., would purchase the assets of OHM, and Shaw would purchase the assets from Beneco Enterprise Inc. Opposition at 6. Plaintiff argues that this "has the effect of taking Shaw's purchase of OHM's assets outside the reach of the Sale Order entered in the [IT] bankruptcy matter." Opposition at 6.

Shaw contends that this is Plaintiff's attempt to raise a "red herring." At oral arguments, Defendant explained that the Utah bankruptcy proceeding is completely unrelated to the present dispute. According to Defendant, in the Utah bankruptcy matter, Beneco Enterprises Inc., a Utah corporation not related to Shaw or Beneco Inc., sold its assets "free and clear" to Beneco, Inc., a wholly owned subsidiary of Shaw. Plaintiff's counsel did not dispute the accuracy of this statement but argued insufficient information.

The court finds that Defendant's explanation at oral arguments persuasive. The Utah bankruptcy proceeding appears separate from and irrelevant to the current dispute. As such, Plaintiff's argument that Shaw purchased assets from a differ-

ent bankruptcy proceeding (Utah) is incorrect and the transaction is irrelevant to the motion to dismiss.

### b. The Proposed Order submitted to the Delaware Bankruptcy Court

■ Second, Plaintiff contends that Shaw and/or IT requested certain language limiting successor liability to be included in the Sale Order, but the Delaware "Bankruptcy Court explicitly refused to include any provisions in the Sale Order that would have protected Shaw from successor liability." Opposition at 7. The omitted language claimed by Plaintiff is: "Shaw shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date;" and "Under no circumstances shall Shaw be deemed a successor of or to the Debtors ...." Opposition at 4–5. Plaintiff concludes that this omission indicates "that its order was not intended to shield Shaw form successor liability." *Id.* Plaintiff does however, acknowledge that "there is some general language in the bankruptcy court's order that could, if viewed in isolation without reference to the proposed order rejected by the bankruptcy court, be interpreted as protecting Shaw from successor liability." *Id.*

Shaw refutes this argument by stating that this is "nothing more than speculation as to why the Bankruptcy Court chose the language it did and, more importantly, ultimately [this argument] requires the rejection of the unequivocal language the Bankruptcy Court did choose." Reply at 4.

The court agrees. Plaintiff has not provided the court with any documents or transcripts from the Delaware Bankruptcy Court explaining why the proposed language was not included in the final Sale Order. Plaintiff assumes this was a meaningful act on the part of the Bankruptcy Court; however, this inference is speculative. What controls is the language of the final order, and only if that language were ambiguous, which it is not, would the omitted language perhaps be helpful. In sum, Plaintiff is asking this court to disregard the plain language of the signed Bankruptcy Court Order, which in part states that the transfer of assets to Shaw "will not subject Shaw to any liability with respect to the operation of the Debtor's business prior to the Closing Date." Deft. RJN, Exh. A at 9 ¶ Q. Plaintiff's argument is unpersuasive.

### c. Authority of the Bankruptcy Court pursuant to 11 U.S.C. § 363(f)

■ Finally, Plaintiff argues that because she holds an unsecured claim, the Bankruptcy Court lacked the authority to approve the sale of assets free and clear of Plaintiff's claim. According to Plaintiff, the Sale Order was issued pursuant to § 363(f) of the Bankruptcy Code, 11 U.S.C. § 363(f), which allows for the sale of debtor's property "free and clear" of any "interest in such property." Plaintiff contends she does not hold an interest, but merely an unsecured claim "to which section 363(f) does not apply." Opposition at 9. Plaintiff expounds on a statutory interpretation of the word "claim" and states that the "Ninth Circuit has not yet ruled on the precise definition of the term 'interest' in the context of section 363(f)." Providing a multitude of cases from other jurisdictions, Plaintiff argues that within this context, the "term 'interest' as used in section 363(f) does not apply to general, unsecured claims such as that held by the Plaintiff in this case. The Bankruptcy Court, therefore, lacked authority to sell IT and OHM's assets 'free and clear' of the Plaintiff's unsecured claim." Opposition at 12.

Shaw argues that Plaintiff's request that this court interpret sections of the Bankruptcy Code is an improper collateral attack on the Bankruptcy Court prohibited

by the U.S. Supreme Court in *Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (respondent impermissibly collaterally attacked Bankruptcy Court's injunction in federal district court, as opposed to the proper procedure which was to appeal to the Bankruptcy Court first). Furthermore, Defendant cites to out-of-circuit case law supporting the proposition that section 363(f) has been interpreted to allow bankruptcy courts to order the sale of assets free and clear of unsecured claims. Reply at 3. Defendant, does not, however, provide any binding Ninth Circuit of California Supreme Court case law, nor does Shaw refute Plaintiff's claim that this issue has not been decided by the Ninth Circuit.

At oral arguments, Defendant argued that the Third Circuit has decided this specific issue in *In re Trans World Airlines,* 322 F.3d 283 (3d Cir.2003). According to Defendant, the Third Circuit broadly interpreted § 363(f), and upheld limiting successor liability in exactly the type of sales agreement involved herein. Plaintiff, on the other hand, distinguished this case from *In re Trans World Airlines* on the grounds that the underlying claims in that case were connected to and arose out of the property being sold, whereas in this case Plaintiff claims it does not.

The court is not persuaded by Plaintiff's argument, and finds that the *In re Trans World Airlines* case does support Defendant's position. In *In re Trans World Airlines,* two lawsuits were pending against Trans World Airlines ("TWA") when TWA entered Chapter 11 bankruptcy proceedings. One suit was an employment discrimination claim, and other involved a voucher program awarded to flight attendants in settlement of a sex discrimination class action. The bankruptcy court in Delaware approved the sale of TWA's assets to American Airlines ("American"), and determined that there was no basis for successor liability on the part of American, and held that the two pending claims were unsecured claims. *Id.* at 285–87. The Third Circuit held that these two interests "are interests in property within the meaning of section 363(f) in the sense that they arise from the property being sold." *Id.* at 290.

Plaintiff argues that her claim for personal injury does not "arise from" the property being sold because the property belongs to the U.S. government. The court does not agree: the property being sold in the Delaware bankruptcy action are the contracts which the U.S. government awarded to IT and OHM to transport toxic materials. Plaintiff's alleged injury arose from IT and OHM's claimed negligent handling of these toxic materials pursuant to these contracts. The court finds that Plaintiff's claim for personal injury does arise from the property being sold, i.e. the contracts to transport toxic materials.

Additionally, the court is concerned with the public policy ramifications of Plaintiff's argument. Allowing Plaintiff to disregard the plain language of the Bankruptcy Court Order would allow unsecured claims to receive greater protection and more priority that secured claims. As the court posited at oral arguments: who would ever purchase assets at a bankruptcy proceeding if the successor liability were not limited, despite the plain wording of the bankruptcy order?

As such, the court is not persuaded by Plaintiff's argument, and finds that the plain language of the Delaware Bankruptcy Court Order states that Shaw purchased the assets "free and clear," which includes Plaintiff's personal liability claim. The court rejects Plaintiff's argument that the complaint cannot be dismissed because Plaintiff holds an unsecured claim and as such is not subject to the jurisdiction of

the Delaware Bankruptcy Court, and instead follows the reasoning of *In re Trans World Airlines.*

### 2. Preemption of State Law by the Bankruptcy Code

■ Defendant argues that because of public policy considerations, "numerous courts have held that the Bankruptcy Code preempts any common law theory of successor liability as applied to purchasers of assets from a bankruptcy estate," citing *In re White Motor Credit Corp.,* 75 B.R. 944 (Bankr.N.D.Ohio 1987). The policies referred to are: (i) "if successor liability claims are not limited, claimants will be encouraged to forego Chapter 11 remedies in favor of more lucrative state or federal court recoveries against purchasers... [T]he claimants are, in effect, receiving a priority over those claims paid in accordance with the Bankruptcy Code;" and (ii) "permitting successor liability actions to proceed would 'chill' Chapter 11 asset bidding because transfers assumed to be 'free and clear' would actually be fraught with liability," Motion at 12. Defendant argues that in *White Motor,* a claimant filed a claim in state court alleging the purchaser's successor liability, but before the plan confirmation. The Bankruptcy Court held that the common law theory of successor liability was preempted, and that to the extent the claimants claims were properly asserted, they would be addressed in the plan of reorganization. Motion at 12, citing *White Motor,* 75 B.R. at 949. Defendant argues that the present case is similar because "Plaintiff received an order from the [Delaware] Bankruptcy Court expanding the claim bar date so that she could properly pursue her claims within the confines of the bankruptcy reorganization; and Plaintiff's claim will properly be considered in accordance with the reorganization plan." Motion at 13.

Plaintiff argues that her claim filed in the Delaware Bankruptcy Court is "worthless" because IT and OHM stated in their voluntary bankruptcy petition that "Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors." Opposition at 12, n. 11. Moreover, Plaintiff argues that Defendant's reliance on *White Motor* is misplaced because, in *White Motor,* the "court was wrong when it concluded that the assertion of a successor liability claim against a party other than the bankrupt debtor conflicts with the discharge provisions of the Bankruptcy Code." Opposition at 13. Plaintiff argues that the Bankruptcy Code's discharge provisions are "expressly limited to claims against the debtor (here, IT and OHM); and Congress made clear that a discharge may not bar claims against third parties other than the debtor." *Id.*

According to Plaintiff, the Seventh Circuit addressed this issue six years after *White Motor,* in *Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159 (7th Cir.1994), which held that state law, and not the Bankruptcy Code preempted successor liability claims. Opposition at 14.

Defendant argues that *Zerand–Bernal* in fact supports its position because the Seventh Circuit noted that "had the [plaintiffs] been parties to the bankruptcy proceeding, [they would] have had no possible basis for a suit against [the asset purchaser] ... because the successorship doctrine on which they rely is inapplicable if the plaintiff had a chance to obtain a legal remedy against the predecessor, even so limited a remedy as that afforded by the filing of a claim in bankruptcy." 23 F.3d at 163. According to Defendant, "Plaintiff's ability to pursue her claim directly against the debtor in the ongoing bank-

ruptcy proceeding prohibits the actions she attempts to being [sic] here." Reply at 6. Moreover, Defendant argues that Plaintiff's concern that her claim in the bankruptcy estate "will prove to be valueless" is meritless because "it does not alter the law the provides that Plaintiff cannot pursue her claim against an [sic] purchaser of assets from such estate in a civil action in district court while the bankruptcy proceeding is ongoing." Reply at 6.

In *Zerand–Bernal*, plaintiff filed a products liability claim in federal district court in Pennsylvania against the asset-purchaser, among others. *Zerand–Bernal*, 23 F.3d at 161. The asset-purchaser attempted to re-open the bankruptcy case and have the plaintiff enjoined from proceeding. The bankruptcy court held that it lacked jurisdiction despite the reservation of jurisdiction in the orders approving the sale of the assets and the plan of reorganization. *Id.* Because the bankruptcy proceedings had been closed over four years prior to the suit, the Seventh Circuit engaged in an analysis of whether this suit "arose under" its jurisdiction (a legal analysis irrelevant to the instant motion). *Id.* The Seventh Circuit noted that in that case, the injury occurred after the bankruptcy sale, but stated that:

> [h]ad the [plaintiffs] been parties to the bankruptcy proceeding, they would have had no possible basis for suit against [the asset purchaser]. But that is not because the bankruptcy court could and would enjoin such a suit; it is because the successorship doctrine on which they rely is inapplicable if the plaintiff had a chance to obtain a legal remedy against the predecessor, even so limited a remedy as that afforded by filing a claim in bankruptcy.

*Id.* 23 F.3d at 163. Plaintiff argues that it was the application of Pennsylvania law that prohibited successor liability, which

she contrasts to California law. Opposition at 14. While the cited language in *Zerand–Bernal* is persuasive, it is dicta; the holding of the case does not clearly answer the question here.

The U.S. Supreme Court has held that Congress did not intend the Bankruptcy Code to preempt all state laws. *Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection,* 475 U.S. 1090, 106 S.Ct. 1482, 89 L.Ed.2d 736 (1986). However, it is a "familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates states laws that 'interfere with or are contrary to' federal laws." *Hillsborough Cty. v. Automated Medical Labs., Inc.,* 471 U.S. 707, 712, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). In considering a preemption claim, the court must first look to the intent and sweep of the federal statute. *Holman v. Laulo–Rowe Agency,* 994 F.2d 666, 668 (9th Cir.1993). The statutes preemptive intent may be either express or implied:

> Under the Supremacy Clause, federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. In the absence of express pre-emptive language, Congress' intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulations is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation. Pre-emption of a whole field also will be inferred where the field is one in which 'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.' Even where Congress has not completely displaced state regulation in a specific area,

state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'

The Ninth Circuit interpreted this principle and other Supreme Court precedent to "suggest that federal bankruptcy preemption is more likely (1) where a state statute facially or purposefully carves an exception out of the Bankruptcy Code, or (2) where a state statute is concerned with economic regulation rather than with protecting the public health and safety." *Baker & Drake, Inc. v. Public Serv. Comm. of Nevada*, 35 F.3d 1348, 1353 (9th Cir.1994) (holding that the Bankruptcy Code did not preempt Nevada's ban on taxi leasing, a regulation intended to secure the public convenience and safety).

Under the facts of this case, I find that the Bankruptcy Code preempts California state law in this case regarding successor liability. The public policy statements in *White Motor* are compelling. Here, Plaintiff knew of the bankruptcy action and asked to participate. Plaintiff never sought or got permission to sue Shaw from the Bankruptcy Court. Plaintiff never asked the Bankruptcy Court to reconsider its order barring successor liability as to Shaw and itself. Plaintiff never appealed the Bankruptcy Court Order. Rather, Plaintiff sued Shaw in this action.

In Chapter 11 proceedings, the court is trying to obtain and preserve as many assets as it can to protect secured and unsecured creditors. To do so, it needs to approve sales of assets to third parties. A key factor to a third party in purchasing assets is the "worth" of the asset. Third parties cannot assess "worth" if the Bankruptcy Court orders that they take the assets free and clear of any and all claims whatsoever, but nonetheless, unsecured creditors can "lie in the weeds" and wait until the bankruptcy court approves a sale before it sues the purchasers. In sum, the court finds the policy considerations outlined in *White Motor* are compelling and adopts them in holding that Plaintiff's claims are pre-empted.

### 3. California Law regarding Successor Liability

■ Alternatively, assuming there is no preemption, the court looks to California law regarding successor liability. As a general rule, under California law a purchaser does not assume the seller's liability. *Ray v. Alad Corp.*, 19 Cal.3d 22, 28, 136 Cal.Rptr. 574, 560 P.2d 3 (1977). There are, however, five exceptions to this rule: (1) there is an express or implied agreement of assumption; (2) the transaction amounts to a consolidation or merger of the two corporations; (3) the purchasing corporation is a mere continuation of the seller; (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability; or (5) the product line theory, which imposes liability for damages resulting from defective products when a party acquires a manufacturing business and continues the output of its line without any outward indication of a change in ownership and the selling company has gone out of business. *Id.* 19 Cal.3d at 28, 34, 136 Cal.Rptr. 574, 560 P.2d 3. Plaintiff concedes that this is not a product-line case, and therefore this exception would not be applicable.

### a. Express or Implied Agreement of Assumption

Plaintiff argues that the Asset Purchase Agreement provided that limiting successor liability was a condition precedent to entering into the agreement, and Shaw could cancel if these conditions were not

met. Opposition at 16. Plaintiff contends that because the Bankruptcy Court excluded some of Shaw's proposed language limiting liability, and went ahead with the agreement, this implies Shaw assumed liability. This court has already found the fact that the Bankruptcy Court omitted some of the proposed language is unpersuasive as to whether the bankruptcy Order shielded Shaw from successor liability; it is equally unavailing here. The key is that the final wording of the Order and the Delaware Bankruptcy Court Order, of which I take judicial notice and by its clear terms, limits successor liability. Hence there is no implied agreement of assumption.

### b. Transaction Amounts to a Consolidation or Merger and Purchasing Corporation is a Mere Continuation

■ The consolidation or merger exception applies when either (1) one corporation takes all of another's assets without providing any consideration that could be made available to meet the claims of another's creditors, or (2) where the consideration consists wholly of shares of the purchaser's stock which are promptly distributed to the seller's shareholders in conjunction with the seller's liquidation. *Ray*, 19 Cal.3d at 28, 136 Cal.Rptr. 574, 560 P.2d 3.

■ The mere continuation exception applies when: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; or (2) one or more persons were officers, directors, or stockholders of both corporations. *Ray*, 19 Cal.3d at 29, 136 Cal.Rptr. 574, 560 P.2d 3.

■ Defendant argues that Plaintiff has failed to adequately plead either of these exceptions. Additionally, Shaw alleges that IT and OHM are "separate and distinct entities undergoing a reorganization" defeating Plaintiff's claim that either of these exceptions apply. Motion at 15.

Plaintiff, however, argues that it has adequately plead both exceptions. Moreover, Plaintiff states that Shaw's purchase of OHM's assets was a reorganization. Citing *Marks v. Minnesota Mining and Manufacturing Co.*, 187 Cal.App.3d 1429, 1437–38, 232 Cal.Rptr. 594 (Cal. 1st Dist. 1986), Plaintiff contends that a "corporate reorganization has been held to constitute 'mere continuation' or 'de facto' merger by at least one leading California case." Opposition at 18. Plaintiff also states that she does not have sufficient information due to lack of discovery to know exactly what happened in the transactions involving IT and OHM. *Id.*

First, Shaw argues that the asset transfer was neither a "de facto merger" nor a "mere continuation" as a matter of law because: (i) the Bankruptcy Court found adequate consideration was paid by Shaw and would be available to creditors; (ii) the consideration consisted of $52.5 million in cash and $52.5 million in stock, not "wholly shares;" (iii) this amount was distributed to creditors, not the seller's shareholders; and (iv) both corporations continue to exists as separate corporations after the sale [Shaw does not state if the "both corporations" referred to are IT and OHM or Shaw]. Reply at 9.

Second, Defendant argues that Plaintiff is attempting to create a new exception to the general rule, and that the Ninth Circuit has rejected such attempts. Defendant does not, however, explain this attempted new exception. Defendant cites to *Nelson v. Tiffany Industries, Inc.*, 778 F.2d 533 (9th Cir.1985) and *Kline v. Johns–Manville*, 745 F.2d 1217 (9th Cir. 1984) in support of this proposition. Plaintiff, however, argues that *Nelson* and *Kline* are both uninstructive and inapplica-

ble. Plaintiff contends that *Nelson* and *Kline* apply the product-line theory exception, which requires a showing that the purchaser of assets caused the "virtual destruction of the plaintiff's remedies against the original manufacturer." Opposition at 19, quoting *Kline*, 745 F.2d at 1219. Plaintiff argues that this exception does not apply to her case, and therefore she does not need to show that the "successor's actions caused the destruction of Plaintiff's remedies against the original company." Opposition at 20.

At oral arguments, Plaintiff pointed to the voluntary petition for bankruptcy submitted by IT and OHM in the Delaware bankruptcy proceeding. Plaintiff stated that the assets were listed at $1.344 billion, liabilities were listed at $1 billion, and the sale of $105 million was grossly inadequate consideration because all of the liabilities were wiped out by the bankruptcy order.

Both sides agreed that I could take judicial notice of the Delaware Bankruptcy Court Order, and what Plaintiff is asking this court to do is either find that the Bankruptcy Court is in collusion with the Defendants or did not do its job in this bankruptcy proceeding. The court cannot make that finding based on the sale price. On the face of the Order, the sale of IT and OHM's shares to Shaw was at approximately fifty cents on the dollar. Without more, or without some case law clearly stating fifty cents on the dollar is enough to support a claim for a "consolidation" or "merger" claim based on successor liability, this figure and the $105 million sales price do not state a viable claim of collusion here. The Delaware Bankruptcy Court was in possession of all documentation and reached an Order approving the sale of assets for $105 million. If Plaintiff felt that the consideration was unconscionable, Plaintiff should have objected to the sale in the Bankruptcy Court or appealed the order approving the sale, neither of which Plaintiff did.

The court, therefore, does not find that the sales price is sufficient to validly state a claim under a de facto merger or a mere continuation theory.

### III. Conclusion

For the foregoing reasons, the court **GRANTS** Defendant's motion to dismiss Plaintiff's claims against Shaw. Because it appear to a certainty that the Plaintiff would not be entitled to relief under any set of facts that could be proven, *Reddy v. Litton Indus.*, 912 F.2d 291, 293 (9th Cir. 1990), *cert. denied,* 502 U.S. 921, 112 S.Ct. 332, 116 L.Ed.2d 272 (1991), the dismissal is **WITH PREJUDICE**.

**IT IS SO ORDERED.**